## MURL E. CRUM AND ANOTHER v. ANCHOR CASUALTY COMPANY.

119 N. W. (2d) 703.

January 4, 1963—No. 38,648.

*Murnane, Murnane, Battis & deLambert,* for appellant.
*Rudolph E. Low,* for respondents.

KNUTSON, CHIEF JUSTICE.
This is an appeal from a summary judgment entered in favor of

plaintiffs on the issue of liability. The present action was brought to recover attorney's fees, expenses, and an amount paid in settlement of a lawsuit which plaintiffs contend defendant was obligated to defend.

Prior to February 2, 1958, plaintiffs purchased from one William Heinsch certain real property used as an apartment house or rooming-house. While Heinsch was the owner, on January 14, 1956, defendant issued to him an owners', landlords', and tenants' liability policy covering the period from January 14, 1956, to January 14, 1959. When plaintiffs purchased the property from Heinsch, this liability policy was assigned to them and the assignment approved by defendant. There is no dispute that the policy was in force on February 2, 1958, and that plaintiffs were the insureds thereunder.

When plaintiffs purchased the property, one Inga Matheson was a tenant living in one of the apartments. On February 2, 1958, she sustained injuries when she fell down a stairway in the building. Thereafter she commenced an action against the Crums to recover damages due to their alleged negligence in maintaining the premises.

The policy contains the following exclusionary provisions:

"Exclusions

"This policy does not apply:

\* \* \* \* \*

"(i) under Coverages A and D, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"(j) under Coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured."

Originally, Mrs. Matheson paid $60 rent for the apartment she occupied. After plaintiffs became the owners, they entered into an arrangement with Mrs. Matheson whereby her rent would be reduced—originally to $45 and later to $40 per month—in consideration of which she would keep the hallways clean, collect the rents, receive complaints, show apartments to prospective tenants, and rent apartments,

making reports to Crum thereon. The original action commenced by Mrs. Matheson alleges that her injuries were the result of the negligence of the Crums in maintaining the premises. The complaint was forwarded to Anchor, and it undertook the defense of the action. Contrary to the contentions of the Crums, Anchor inserted as a defense the following paragraph:

"As a further defense, defendants allege that at the time and place of the accident alleged in plaintiff's complaint, the plaintiff herein was an employee of these answering defendants and was subject to the provisions of the Workmen's Compensation Law of Minnesota, M. S. A. 176 and by reason thereof, her exclusive remedy at law is as provided therein."

There was no mention in Mrs. Matheson's complaint of any employment relationship between her and the Crums nor of the circumstances under which she was present on the premises at the time of her alleged injury.

On September 4, 1958, Anchor's counsel sent the Crums a letter advising them that the policy did not cover the accident because of exclusions (i) and (j) set forth above and that, since Mrs. Matheson had not alleged in her complaint that she was an employee of the Crums, Anchor was required to defend against her suit but "that in the event that the evidence and testimony of this case discloses that Inga Matheson was an employee, that the Anchor Casualty Company will not be liable for any verdict or judgment which may be rendered against you and in her favor."

The Crums' attorney replied to this letter on September 30, 1958, saying:

"In order that there might be no misunderstanding, the position of my clients in this matter is that exclusions 'I' and 'J' in the policy have no application. There is first a question that the plaintiff could be classed as an employee, and second, if she is so classed, then there is a question that the alleged injury arose out of and in the course of her employment.

"As mentioned in your letter, paragraph numbered 'V' of your

answer pleads, as a defense, that the plaintiff's claim is covered by the Workmen's Compensation Act. Mr. and Mrs. Crum do not concur in the asserting of that defense in the action. I believe that under Condition 11 of the policy they would be precluded from asserting a position independent of the Insurance Company's in the pending action. Mr. and Mrs. Crum will not be bound by any result of your asserting of this defense which might be adverse to their personal interests."

On December 29, 1958, depositions were taken from Mrs. Matheson and Mr. Crum. Counsel representing both Anchor and the Crums were present, but it appears from the depositions that counsel for Anchor was in full charge of the defense. In the deposition of Mrs. Matheson, he asked all the questions but four, the deposition covering some 40 pages. Practically all the questions were directed toward procuring an admission from Mrs. Matheson that she was an employee of the Crums and engaged in the scope of her employment at the time she sustained the alleged injury. However, her answers conclusively established the contrary. She testified that one of the other tenants of the building was in the process of redecorating her apartment; that this tenant, a Miss Larson, had picked out the paint herself; and that Mrs. Matheson had never seen this apartment so Miss Larson invited her to come in and look at it, which she did. It was on the return to her own apartment from this visit that Mrs. Matheson fell and sustained the injuries complained of. With respect to her employment, Mrs. Matheson testified as follows:

"Q. Are there any other things you did around the building, except take complaints from the people and collect the rents and show the apartments and keep the apartments clean and for the first year take the rubbish out?
"A. Yes.
"Q. Was there anything else you did around the building?
"A. No. There isn't anything else to do."

In Crum's deposition he stated that about 2 months after acquiring the premises an arrangement was made with Mrs. Matheson that she was to take care of the halls by vacuuming them, take in the rents and

rent the apartments, and receive complaints and refer them to Crum. Counsel for Mrs. Matheson then attempted to procure from Crum an admission that he did not carry workmen's compensation insurance. This was objected to by counsel for Anchor, and the question was not answered.

Thereafter, on February 16, 1959, Anchor made a motion for summary judgment based on the files and proceedings and the depositions of the parties. On the same date Mrs. Matheson made a motion to require the Crums to answer an interrogatory as to whether Crum had workmen's compensation insurance on the date of the accident. The trial judge ruled that the interrogatory should be answered, and counsel for the Crums stated that they did not have workmen's compensation insurance and had not elected to self-insure. Thereupon counsel for Mrs. Matheson advised the court that she elected to bring her action under the Workmen's Compensation Act, as more particularly provided in Minn. St. 176.031.[1] She was given 10 days to amend her complaint, and the Crums were allowed 20 days in which to answer.

The amended complaint was filed on March 31, 1959, and service

---

[1] "The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death. If an employer other than the state or any municipal subdivision thereof fails to insure or self-insure his liability for compensation to his injured employees and their dependents, an injured employee, or his legal representatives or, if death results from the injury, any dependent may elect to claim compensation under this chapter or to maintain an action in the courts for damages on account of such injury or death. In such action it is not necessary to plead or prove freedom from contributory negligence. The defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee, unless it appears that such negligence was wilful on the part of the employee. The burden of proof to establish such wilful negligence is upon the defendant. For the purposes of this chapter the state and each municipal subdivision thereof is treated as a self-insurer when not carrying insurance at the time of the injury or death of an employee."

was admitted by counsel for the Crums on February 24, 1959. The amended complaint alleges a cause of action based upon the provisions of the Workmen's Compensation Act. It does not allege, as had the original complaint, that the injury was due to the negligence of the Crums. An amended answer was interposed to this complaint by the Crums' private attorney, admitting their ownership of the premises but denying all other allegations of the complaint. Thereafter, on March 9, 1959, counsel for Anchor sent the following letter to counsel for the Crums:

"I again enclose the original amended complaint of the plaintiff, upon which you admitted service on February 24th, 1959. This was sent to us by yourself by letter dated February 27th, which letter we received February 28th.

"You have previously been advised, as have Mr. and Mrs. Murl Crum by letter dated September 4th, 1958, that the policy of insurance issued to the Crums by the Anchor Casualty Company does not extend coverage, because of exclusions 'I' and 'J' in the policy, for any employee who is injured and who has rights under the Workmen's Compensation Act. It is apparent from the amended complaint of the plaintiff herein that the plaintiff is alleging that she was an employee at the time of the accident, and that her injury arose out of and in the course of her employment, and that specifically by paragraphs 3, 5 and 6, the plaintiff is alleging a cause of action under the Workmen's Compensation Act. By reason thereof, it is the position of the Anchor Casualty Company that the loss claimed by this complaint is not covered by the Anchor Casualty policy issued to the Crums. For that reason, we herewith return to you the amended complaint so that if you so desire you may interpose an answer to protect the Crums. If there is any question on this, we would be more than happy to meet with you and further discuss our views with you."

Anchor then withdrew from the defense of the action. On March 11, 1959, the attorney for the Crums sent Anchor's counsel a letter in reply, the relevant portions of which read:

"I call your attention to my letter of September 30, 1958 addressed

to you which sets out the position of Mr. and Mrs. Crum with reference to the alleged injuries to plaintiff and the coverage under their insurance policy issued by the Anchor Casualty Company, which is your client. The position of Mr. and Mrs. Crum with reference to the accident having happened under circumstances not covered by the Workmen's Compensation Act, and, therefore, falling within the provisions of Anchor Casualty Company Policy No. SGL 100588, is strengthened and supported by the deposition of the plaintiff taken in your office with which you are familiar.

"In our telephone conversation of this morning I tendered again the defense of the above case to you on behalf of your client, the Anchor Casualty Company. You declined the defense. Therefore, I will take such action as is necessary to defend Murl E. Crum and Lillian M. Crum in this action and if successful will hold the Anchor Casualty Company responsible for all costs, charges and expenses of Mr. and Mrs. Crum which arose by reason of the claimed accidental injury to Inga Matheson and the bringing of this action and its defense."

The attorney for the Crums then assumed the defense of the action, which was subsequently settled for $600. The record does not show the basis for this settlement. This action was then commenced by the Crums to recover attorney's fees and expenses of defending the action brought by Mrs. Matheson and the amount paid in settlement of the action. Motions for summary judgment were made both by plaintiffs and defendant. The court denied the motion of defendant and granted that of plaintiffs on the issue of liability, leaving for trial and determination the amount of damages which plaintiffs were entitled to recover.

The present appeal presents essentially two issues: (1) Was Anchor under a duty to defend the action brought by Mrs. Matheson as she alleged it in her amended complaint? (2) Is Anchor estopped from denying its duty to defend the action if it be found that there was no such duty? The lower court held in the affirmative on both issues in granting summary judgment to plaintiffs.

The order denying defendant's motion for summary judgment is not appealable and the appeal therefrom must be dismissed. Similarly, the order granting summary judgment is not appealable, but the appeal

is also from the judgment entered pursuant to such order, which is appealable, so the issues raised by all the appeals are before us.

At the outset it may be stated that we are in accord with the trial court's determination that the record conclusively establishes that at the time Mrs. Matheson fell and sustained her injuries she was not acting within the scope of her employment. She was on an errand of her own, paying a visit to a fellow tenant to satisfy her own curiosity, which had nothing to do with her part-time duties as an employee. There is no evidence in the record to contradict her admissions to that effect, and we have not been shown how any other evidence could be adduced on this fact issue. Her admissions in her deposition negate the allegations of her amended complaint and bring her action, if any she had, within the coverage of the insurance policy. Neither can there be any doubt that Anchor had full knowledge of the admissions of Mrs. Matheson when it withdrew from the defense of that action. The pertinent question then resolves itself into this: Where a complaint in an action brought against an insured alleges a cause of action excluded from a liability insurance policy but the insurer has knowledge that the actual facts are such as to bring the cause of action—if it can be established at all—within the insurance coverage, may the insurer ignore the knowledge it has and refuse to defend simply because the complaint alleges a cause of action excluded by the policy?

1. Minnesota is in accord with the general rule that, at least absent knowledge to the contrary, an initial determination that an insurer is not obligated to defend a cause of action against its insured may be made from the facts alleged in the complaint.[2]

Anchor relies largely on our recent decision in Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19. In that case actions were brought to recover for the death of two employees of Oja's, Inc., as a result of injuries sustained while using a car owned by Oja's, Inc., within the scope of their employment. The complaints alleged that the automobile was owned by Frank E. Oja, the president of the corporation. The

---

[2] 7A Appleman, Insurance Law and Practice, § 4683; Annotation, 50 A. L. R. (2d) 458, 465, 507. See, Christian v. Royal Ins. Co. 185 Minn. 180, 240 N. W. 365.

insurance policy involved excluded liability for damages arising out of the use of an automobile owned by Oja. Unless plaintiffs could establish that the automobile was owned by Frank E. Oja personally, their right to recover was limited by the Workmen's Compensation Act. We held that the insurer was under no obligation to defend because, no matter which position plaintiffs took, the liability of the insurer was excluded by the policy. We said (258 Minn. 295, 104 N. W. [2d] 25):

"* * * The two actions brought by the trustees for the heirs and next of kin of the employees of Oja's, Inc., are predicated upon the claim that Frank E. Oja, personally, was the owner of the automobile involved. Obviously it was necessary to so allege because plaintiffs were employees of the corporation and all rights of recovery for their death arising out of and in the scope of their employment are limited by workmen's compensation acts. The cause of action must fail as far as vicarious liability is concerned unless ownership of the automobile can be established in Frank E. Oja. If, on the other hand, it can be established that Frank E. Oja, rather than Oja's, Inc., is the owner of the automobile, then clearly liability on the part of third-party defendant is expressly excluded by the policy. In either event, the third-party defendant insurer is not liable. It must follow that it is under no obligation to defend the action."

The case did not involve a situation such as we have here, where the amended complaint alleges a cause of action excluded by the policy but the insurer has knowledge independent of the complaint that the true facts, if established, may bring the cause of action within the policy coverage. In the Bobich case, it was impossible for plaintiffs to bring the cause of action within the insurance coverage no matter what position they took.

2.   Weis v. State Farm Mutual Auto. Ins. Co. 242 Minn. 141, 64 N. W. (2d) 366, 49 A. L. R. (2d) 688, involved a situation nearly opposite from that now before us. In that case the complaints alleged a cause of action within the coverage of the insurance policy. The policy excluded liability for intentional acts. The complaints alleged that defendant, the insured, had negligently, carelessly, recklessly, de-

liberately, and unlawfully run into the rear of plaintiffs' automobile and that he had done so wantonly, maliciously, willfully, and repeatedly. The insured stated to an adjuster for the insurance company that he had had no accident but that he had deliberately run into the rear of plaintiffs' automobile. Inasmuch as a deliberate act of this kind was excluded by the policy, the insurer refused to defend. We held that it was proper for it to do so, saying (242 Minn. 145, 64 N. W. [2d] 368, 49 A. L. R. [2d] 692):

"* * * It is therefore our opinion that, where it appears clear *from the record* that no accident occurred and where the owner himself, by his own statements and admissions, indicated that the incidents complained of were not accidents but intentional and deliberate acts on his part while operating his own automobile, there was no coverage under the policy involved. * * *

* * * * *

"* * * Here, Weis was sued for deliberately and negligently running into the rear end of the James automobile. *According to the record on this appeal,* he admits that he did run into the James automobile and that he did so intentionally and deliberately. In the face of this admission, there is no room to draw implications from the verdicts and judgments in the suits by Mr. and Mrs. James against Weis. We cannot draw implications from such verdicts and judgments which would have to be inconsistent with Weis's own admissions.

* * * * *

"* * * Here, again, *we are faced with the admissions of plaintiff,* from which it is only possible to conclude that his acts giving rise to the suit were outside the coverage afforded by the policy." (Italics supplied.)

Obviously, the admissions of the insured, upon which we based our decision that there was no obligation to defend, was no part of the complaint in the action. If, then, the insurer may refuse to defend when the complaint states a cause of action covered by the insurance because it has knowledge dehors the complaint that would exclude liability, we see no good reason why it should not be obligated to defend

where it has knowledge dehors the complaint that the true facts, if established, will bring the cause of action within the insurance coverage.

We realize that the authorities on this question are in conflict. The cases, pro and con, are collected in Annotation, 50 A. L. R. (2d) 458, 497. It would unduly extend this opinion to attempt to review them here, and it would serve no useful purpose. They have been adequately reviewed in the annotation.

In Hardware Mutual Cas. Co. v. Hilderbrandt (10 Cir.) 119 F. (2d) 291, the facts are quite similar to those now before us, and the objections of the insurer were the same. In rejecting the rule that the insurer may rely on the complaint and ignore knowledge it has of the true facts, the court said (119 F. [2d] 299):

"* * * In the brief of the insured it is said:

" 'A simple illustration will demonstrate the unsoundness of the position taken by opposing counsel: A owns two automobiles, a Ford and a Nash. The Ford is covered by the policy of the company but the Nash is not. A, while driving the Ford, negligently injures a third party and this party brings an action for damages alleging that A was driving the Nash. A notifies the company of the accident, furnishes it a copy of the petition, and explains to it that the car actually involved in the accident was the Ford and not the Nash. The company shuts its eyes to the information given to it by A as to the car actually involved in the accident, relies solely upon the allegations of the petition, makes no investigation of the facts and circumstances, denies liability and refuses to defend except upon a nonwaiver which A declines to give. A undertakes the defense of the action with counsel of his own and negotiates a prudent settlement for a stipulated sum which he pays, and then makes demand upon the company to reimburse him which it declines to do, taking the position that there is no coverage as reflected by the allegations of the petition.'

"The hypothetical case appropriately illustrates with emphasis the scope and effect of the contention of the company. Upon further consideration, we think the contention must fail."

In Bituminous Cas. Corp. v. Travelers Ins. Co. (D. Minn.) 122 F. Supp. 197, one of the questions was whether an injury occurred while

a truck was being loaded. The complaint did not so allege. One of the insurance companies involved claimed, among other things, that inasmuch as the complaint did not disclose that the injury was occasioned by loading operations it was under no duty to defend. In rejecting this claim, the Honorable Gunnar H. Nordbye said (122 F. Supp. 201):

"* * * It is not readily apparent from the complaint * * * that the injury to Williams was incurred in the process of loading the truck. But in the tender that was made to Travelers to defend, Travelers was specifically informed that Williams was injured in the process of loading the Williams truck by the negligence of Wegman, and that under the Travelers policy there was, therefore, coverage. The fact that the complaint did not set forth in detail a factual basis for Travelers' coverage did not relieve Travelers of its duty to defend when notice of the actual facts in the tender indicated that the injury to Williams was one covered by its policy. If the rule were otherwise, then in order to be defended by his insurer, the insured would be required to move the court for an amendment of the pleading against him. Surely, such procedure would not be required when the insurer is possessed of all of the facts which bear upon the coverage of its policy."

Under our modern system of pleading and practice the amendment of pleadings is liberally allowed even after judgment has been entered.[3] In Journal Pub. Co. v. General Cas. Co. (9 Cir.) 210 F. (2d) 202, 209, the court said in that respect:

"We hold therefore that even although it may be considered that the pertinent complaint stated a case necessarily outside of the policy coverage, and that in consequence when this complaint was handed to General it owed no duty to defend, yet we think that a policy of this kind will not stand a construction which would permit General to escape its obligation under paragraph I merely because of an allegation of employment made by a third party claimant for whose acts and allegations the insured can hardly be held responsible. The contract drawn and sold by it ought not thus to be construed so strongly in its

---

[3]See, Rules of Civil Procedure, Rules 15.01 and 15.02.

own favor. One of the outstanding facts of modern litigation is the diminishing importance of initial pleadings in the light of the ease of amendment and the use of pretrial proceedings to lay the pleadings on the shelf."

3. Whether an insurer is under an obligation to defend is not always free from doubt until the case is actually tried. Such doubts should be resolved in favor of the insured. This question was considered in Lee v. Aetna Cas. & Surety Co. (2 Cir.) 178 F. (2d) 750, 752, where the court, speaking through the Honorable Learned Hand, said:

"Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases—the case at bar was one—it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defence of a claim which it turns out the insurer has promised to pay. We do not believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay. The only exception we can think of is that the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence."

This case is again illustrative of a situation that arises where an insurer undertakes the defense of an action for its insured and a conflict exists between the insurer and the insured as to its obligation to de-

fend.[4] Where such conflict exists, an attorney who is provided by the insurer to represent the insured is placed in an exceedingly awkward position when he is expected to interpose, in the defense of the insured, a claim on the part of the insurer which, if established, will render the insured liable to an injured third party. Here, the insured denied that the injured person was their employee or that, if she was, she was engaged in the scope of her employment when injured. The issue of workmen's compensation liability was injected by Anchor into the case brought by Mrs. Matheson solely for the purpose of absolving itself from liability to the Crums. In the depositions taken, in which the examination was conducted mainly by counsel for Anchor, the main thrust was directed, not at establishing a defense for the Crums to the cause of action alleged by Mrs. Matheson, but at establishing a defense to Anchor's liability to the Crums. The injection of this element into the case, and the deposition taken by Anchor's counsel, induced Mrs. Matheson to amend her complaint to allege a cause of action under the Workmen's Compensation Act, obviously for the purpose of escaping any claim of contributory negligence or assumption of risk. Not only did the Crums deny that Mrs. Matheson was their employee and that she was engaged in the scope of her employment when injured, but the deposition of Mrs. Matheson conclusively established the latter fact. In spite of the insured's denial, the answer interposed by counsel furnished by the insurer asserted that the injured person was such employee and engaged in the scope of her employment when injured. Establishment of that claim could mean only that the insured, instead of having a defense to the cause of action, would become personally liable to the injured plaintiff. It is obvious that the only purpose of inserting the claim in the answer and attempting to establish it by the deposition was to absolve the insurer of liability to its insured.

How can an attorney be expected to defend an insured while asserting a claim that will, if established, make the insured liable to the injured party? As long as we follow the practice under which an insurer in this type of action may not be joined as a party defendant,

---

[4]See, Newcomb v. Meiss, 263 Minn. 315, 116 N. W. (2d) 593.

an attorney retained by an insurer to defend its insured, as long as he represents the insured, is under the same obligations of fidelity and good faith as if the insured had retained the attorney personally.[5] The relationship of client and attorney exists the same in one case as in the other. The attorney may not be permitted to take a position adverse to the interest of his client. If a conflict exists between the insurer and the insured as to its obligation to defend, that conflict can be resolved in an appropriate proceeding without jeopardizing the rights of the insured. Here, it is clear that even though the insurer was unsuccessful in establishing what it attempted to do by the depositions of Mrs. Matheson and Crum it still withdrew, knowing full well that the Crums denied that the injury arose out of the employment and that Mrs. Matheson had admitted that it did not. Under these circumstances, we are of the opinion that the obligation to defend this action continued.

It must be kept in mind that in situations of this kind the insured who is sued has no control over the allegations of the complaint. We think the better rule is that, if the insurer is advised by the insured what he claims the facts to be or the insurer by an independent investigation ascertains that the facts are in conflict with the complaint and, if established, will present a potential liability on the part of the insured covered by the insurance contract, the insurer is obligated to undertake the defense. That rule does not prevent the insurer from seeking an independent determination of its liability to defend in an appropriate proceeding between the insurer and the insured.

Both parties moved the court for summary judgment based on all the files and proceedings herein, including the depositions and files in the action brought by Mrs. Matheson. From these depositions it conclusively appears that Inga Matheson was not engaged within the scope of her employment when injured. Applying the rules stated above to these facts, it was proper for the trial court to grant summary judgment on the issue of liability. The amount of damages plaintiffs are entitled to recover remains for trial.

Affirmed.

---

[5]29A Am. Jur., Insurance, § 1464.