## PROCTOR SEED & FEED CO., Inc. *v.* HARTFORD ACCIDENT AND INDEMNITY CO & INSURANCE CO. OF NORTH AMERICA

5-6175                                        491 S.W. 2d 62

Opinion delivered March 5, 1973
[Rehearing denied April 16, 1973.]

*N. M. Norton,* for appellant.

*Shaver & Shaver,* for appellee.

CARLETON HARRIS, Chief Justice. Proctor Seed & Feed Company, Inc. (hereinafter called Proctor) instituted suit in December, 1968, against one Carruth Linn in the St. Francis County Circuit Court seeking judgment against Linn on an account and note. Linn filed a cross-complaint (counter-claim), seeking damages against Proctor for allegedly converting his soybeans, trespassing on land leased by him in order to convert said soybeans, and seeking punitive damages for the conversion of the beans because conversion was willful, wanton and malicious, and further asking that said damages be offset against any judgment that Proctor might obtain against him. The cross-complaint was unsuccessful but Proctor incurred an expense of $2,214.50 for attorneys' fee and costs. Prior to this litigation, Hartford Accident & Indemnity Company (hereinafter called Hartford) and Insurance Company of North America had issued to Proctor insurance policies which, according to Proctor, obligated them to defend against the counter-claim made by Linn. Accordingly, Proctor instituted suit against Hart-

ford and Insurance Company of North America asserting that though put upon notice, the companies had failed to undertake his defense, and that he had accordingly been forced to employ attorneys and defend the suit at a cost in attorneys' fees and other expenses in the total amount of $2,214.50. Judgment was prayed against the companies for this amount. Each side moved for a summary judgment, appellees supporting their motions with the policies sued upon and copies of the cross-complaint and amended cross-complaint in the action between Proctor and Linn. Thereafter, Proctor likewise asked for a summary judgment supporting it with an affidavit of Phil Hicky, the attorney who represented Proctor in the litigation with Linn. The court granted the summary judgment sought by the companies and from that judgment, Proctor, appellant herein, brings this appeal.[1]

For reversal, it is simply asserted that there are no genuine issues of material fact, and that as a matter of law, upon the undisputed facts and pertinent provisions of the Hartford policy, the trial court should have overruled the motion for summary judgment made by this appellee, but granted the similar motion made by appellant.

The provision of the policy depended upon by appellant reads as follows:

"The company will pay on behalf of the insured all sums which insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence,. . . ."

"Occurrence" is subsequently defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;. . . ."

---

[1]Appellant concedes that, because of the particular wording of the policy, the judgment in behalf of Insurance Company of North America should be affirmed.

Relative to the Proctor-Linn litigation, a "cross-complaint and set-off" was filed by Linn asserting that Proctor had "appropriated and converted to the plaintiff's use 795 bushels of soy beans wholly without the defendant's permission or authorization, and sold said soy beans for $2.43 per bushel in the plaintiff's name. * * * The soybeans which were converted by the plaintiff were grown and harvested for the purpose of planting as seed beans and as such had a market value of $4.00 per bushel, $3,180.00. The cost of sacking and cleaning said beans would have been $302.10, leaving a net market value of the beans converted by plaintiff at $2,877.90, thereby causing direct damage to the defendant by reason of such conversion in the amount of $945.05."

By amendment, Linn asserted he was entitled to treble the value of the soybeans since in acquiring such beans, Proctor Seed & Feed Company, by its agent, was trespassing on the land leased by Linn when the beans were taken; that plaintiff's acts were "willful, wanton, and malicious". Linn likewise sought $20,700 as the difference in the value of the bean crop he actually made and the value of such crop which would have been made had plaintiff not converted the said beans, "which were of a higher quality than the seed beans he was able to obtain to replace his own."

By still another amendment, Linn changed the amount alleged as damage, and wound up seeking total damages in the amount of $30,041.00. Of course, it is at once apparent that the allegations in the counterclaim do not in any manner relate to an "accident", and under the provisions of the policy, coverage is limited to an accident.

In *Equity Mutual Insurance Co.* v. *Southern Ice Co.,* 232 Ark. 41, 334 S.W. 2d 688, this court definitely held that the insurer's obligation to defend the insured is based upon the allegations of the complaint filed against the insured. We said:

"The great weight of authority, in cases like this and involving the insurer's duty to defend, is that

the allegations in the pleadings against the insured determine the insurer's duty to defend. It is not what the insurance company may have gleaned from its outside investigation: it is the allegations made against the insured — however groundless, false, or fraudulent such allegations may be — that determine the duty of the insurer to defend the litigation against its insured.

See also *Fisher* v. *The Traveler's Indemnity Company*, 240 Ark. 273, 398 S.W. 2d 892, and cases cited therein.

Appellant argues, however, that the facts in this case are vastly different from those in the cases cited, and that we have also said that there are exceptions to that general rule, citing *Employers Mutual* v. *Puryear Wood Products Co.*, 247 Ark. 673, 447 S.W. 2d 139. We commented as follows in that case.

"We have held that the allegations in a complaint determine the obligation of the insurer to defend its insured *Fisher* v. *The Traveler's Indemnity Company*, 240 Ark. 273, 398 S.W. 2d 892, and cases cited therein. However, appellant does not contend that this court, in determining this question, is confined to those allegations. That complaint alleges that the trailer was in the care, custody and control of Puryear, but it also alleges that the damage to the trailer was a result of the negligence of Puryear. Since it would be possible that a jury could find that the loss was due to Puryear's negligence without also finding that the trailer was in its care, custody and control, it is apparent that appellant's obligation to defend cannot be determined simply from the allegations in the Landon complaint."

In *Puryear*, the words construed were "care, custody and control of insured" and the situation was entirely dissimilar to the instant case; it will also be noted that the insurance company was not contending that the allegations were controlling. However, we reiterate that there may well be situations where an insurance com-

pany's obligation to defend cannot be determined simply from the allegations in the complaint. However, this is not such a case. Appellant says that the obligation to defend should be determined on the basis of the facts actually known by the insurance company, rather than by the allegations in the cross-complaint filed by Linn, and appellant apparently relies upon the affidavit of Mr. Hicky as showing that the company was acquainted with facts which were dissimilar and not in accord with the allegations in the pleading. Even if we were inclined to the belief that this is the type of case that might prove to be an exception to the general rule, we find no evidence that the company was familiar with facts that obligated it to defend. In his affidavit, Mr. Hicky stated:

> "5. Upon the filing of the original counterclaim, we notified the defendant, Hartford, of what was going on, but we were not greatly concerned when Hartford raised some question about whether the claim fell within the coverage of its policy, because the amount involved in the counter-claim at that point was small in comparison to the amount being sued for in the complaint, and it was doubtful whether that claim would be collected in full under the best of circumstances.
>
> 6. Upon the filing of the amendment, however, introducing the additional claim for treble damages, loss of profits, and punitive damages, we did become concerned, because the amount then being sued for by Mr. Linn very substantially exceeded the amount being sued for by our client, and from that point on the two insurance companies were provided by me with copies of all pleadings, and I was frequently in communication with them, principally by telephone, on the question whether they were going to undertake the defense of the counterclaim and treat that claim as covered in event Mr. Linn should effect a recovery on it."

We do not know what facts were supplied to Hartford by Mr. Hicky, nor do we know what pleadings

Proctor filed in response to the counter-claim since a copy of Proctor's pleadings is not abstracted nor included in the transcript.

A letter written by Hicky to Hartford appears in the transcript, but this letter was not abstracted, appellant mentioning specifically that the letter was not being abstracted.[5] For that matter, the letter was written *after* the trial of the lawsuit, which could hardly be pertinent to whether the company breached its contract in not defending the litigation. At any rate, we think *Equity Mutual Insurance Co.* v. *Southern Ice Co., supra* is controlling. This finding, of course, settles the litigation and precludes any discussion of the second part of appellant's point where it asserts that the court should have granted its motion for summary judgment. It might be stated that we have said that we cannot pass on the question of whether a summary judgment should have been granted, for this is not an appealable order. See *Widmer* v. *Ft. Smith Vehicle & Machinery Corp.*, 244 Ark. 971, 429 S.W. 2d 63.

Affirmed.

---

[5] "We do not abstract the letters referred to in Attorney Hicky's affidavit. They were to lay people in the insurance companies' organizations, who had been making the contention that the claim was not covered because of an exclusion as to damage to property in the care, custody, or control of the insured. Once the matter got into hands of attorneys, that contention disappeared and as far as we can tell it does not now figure in the case. (R. 81-92) In addition, it apparently is not being argued that the insurance company was not kept adequately informed by Attorney Hicky at all times."