### INLAND CONSTRUCTION CORP., Appellant,

v.

### CONTINENTAL CASUALTY COMPANY, Respondent,

American and Foreign Insurance Company, Respondent.

No. 47007.

Supreme Court of Minnesota.

Oct. 7, 1977.

John J. Waters, Bloomington, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and James F. Roegge, Minneapolis, for Continental.

Arthur, Chapman & Michaelson and Robert W. Kettering, Jr., Minneapolis, for Am. and Foreign Ins. Co.

Heard before ROGOSHESKE, MacLAUGHLIN and PLUNKETT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The major issue raised on this appeal is whether an insurer must defend its insured under a standard form general liability policy of insurance when the insured is sued for converting personal property. We affirm the trial court's finding, rendered in declaratory judgment proceedings, that the insured was not entitled to a defense since the pleadings, setting forth the tort of conversion, did not allege or claim property damage within the contemplation of insurance coverage.

Plaintiff, Inland Construction Corporation (Inland), is a Minnesota corporation engaged in the business of commercial land development, including the construction of buildings. In the spring of 1970, Inland was in the process of constructing an office-warehouse building located at 7533 Washington Avenue South in Edina, Minnesota. Prior to completing the building, Inland sold the property to Investment Dynamics Corporation (IDC) under a contract for deed whereby Inland agreed to be responsible for finding lessees for the building and for all expenses on the property until the "rent achievement date." [1]

On May 26, 1971, Inland leased a portion of the building to C. E. Knowlton & Associates and to C. E. Knowlton personally (Knowlton). The rent achievement date was ultimately realized in September 1971, and full title and control passed to IDC pursuant to the contract for deed. It was agreed, however, that Inland would continue to guarantee the rent due on the Knowlton lease until the end of 1971, since Knowlton had been delinquent in making payments.

It was during this time that a man named James Dorsey contacted an employee of Inland and requested to gain entrance to the premises leased by Knowlton. Because the employee did not personally know Dorsey, he refused to give him a key. Thereafter, the employee attempted, without success, to telephone Mr. Knowlton concerning this incident. The employee then visited the Knowlton leasehold and found mail piled up inside the door and evidence that the rear door had been tampered with. Acting on the erroneous belief that Inland was still responsible for the security of the building, the employee ordered the locks changed on the premises held by Knowlton. It was only after the locks had been changed that the employee learned that IDC had assumed responsibility for the building.

Inland subsequently commenced an action against Knowlton for the recovery of $7,735.05 in unpaid rent. Knowlton answered and then counterclaimed, alleging that Inland had "willfully, intentionally, wantonly and maliciously converted" his personal property when Inland's employee had unjustifiably changed the locks.[2] The counterclaim sought compensatory damages in the amount of $300,000 and $600,000 in punitive damages. A similar but independent action was also commenced by James Dorsey, who claimed that he possessed a security interest in personal property located within the leasehold premises and that Inland, by changing the locks, had converted this interest. The provisions of Dorsey's complaint were virtually identical to the allegations made in Knowlton's counterclaim and concluded with a prayer for relief

---

1. Under the contract for deed the "rent achievement date" was defined as occurring when the building was 80-percent occupied under leases generating a gross annual income of not less than $105,479.

2. Although the counterclaim contained five separate counts, each count essentially alleged that Inland had intentionally converted the personal property of Knowlton.

seeking $182,000 in compensatory damages and $300,000 punitive damages.

At the time that these actions were instigated, Inland was insured under a standard form policy of comprehensive liability insurance issued by defendant American and Foreign Insurance Company (Royal Globe). This policy provided in relevant part:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [bodily injury or property damage] to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *." (Italics supplied.)

Elsewhere in the policy, the term "occurrence" was defined as follows:

> " 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period in bodily injury or *property damage* neither expected nor intended from the standpoint of the insured." (Italics supplied.)

"Property damage" was further defined by the policy as an "injury to or destruction of tangible property."

Apart from the general liability coverage, the Royal Globe policy also contained a personal injury endorsement, which provided liability insurance coverage for damages caused from malicious prosecution, wrongful entry or eviction, and other invasions of the right of private occupancy.

In addition to the Royal Globe policy of insurance, Inland carried a policy of excess third-party liability insurance with defendant Continental Casualty Company (CNA). The CNA policy contained two separate coverages. Coverage A expressly incorporated the underlying Royal Globe policy and only provided for liability coverage in excess of the Royal Globe policy limits. Coverage B provided separate and distinct liability coverage from that provided by the Royal Globe policy. Both coverages A and B extended protection only for "property damage" resulting from an "occurrence," which terms were defined similarly to the previously quoted definitions in the Royal Globe policy. The CNA policy further provided that in the event the underlying insurer, Royal Globe, did not defend Inland, then CNA would either assume the duty to defend or reimburse Inland for its reasonable litigation expenses.

After Inland received Knowlton's counterclaim and Dorsey's complaint, it tendered the defense of these actions to Royal Globe and CNA. When both insurers refused to defend, Inland initiated the present declaratory judgment action seeking to compel compliance with the insurance contracts. Trial of the underlying lawsuits was stayed pending the outcome of the declaratory proceeding. The court held that Inland was not entitled to a defense from either insurer because the facts, as alleged in the pleadings, did not constitute an "occurrence" and because the claimed conversion did not cause "property damage" within the contemplation of either policy of insurance. Inland appeals from this declaratory judgment and the trial court's refusal to issue amended findings of fact and conclusions of law or to grant a new trial.

█ The principal question that must be decided is whether Inland was entitled to a defense under the provisions of the comprehensive general liability portion of its policy of insurance with Royal Globe. In *Bituminous Cas. Corp. v. Bartlett*, 307 Minn. 72, 75, 240 N.W.2d 310, 312 (1976), we recently summarized the nature of the insurer's obligation to defend its insured:

> " * * * The obligation to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy. *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 332, 204 N.W.2d 426, 429 (1973). However, the complaint is not controlling when actual facts clearly establish the existence or nonexistence of an obligation to defend. *Crum v. Anchor Cas. Co.*, 264 Minn. 378, 119 N.W.2d 703

(1963) * * *. If any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend. *Christian v. Royal Ins. Co.*, 185 Minn. 180, 240 N.W. 365 (1932). Any ambiguity as to coverage at the pretrial stage is to be resolved in favor of the insured."

To resolve questions of policy coverage and the insurer's duty to defend, we have previously endorsed the use of a declaratory judgment proceeding prior to litigation of the substantive claims against the insured.[3] See, *Caspersen v. Webber*, 298 Minn. 93, 98, note 2, 213 N.W.2d 327, 330 (1973); *Newcomb v. Meiss*, 263 Minn. 315, 116 N.W.2d 593 (1962).

A fair reading of the multiple allegations contained in both Dorsey's complaint and the counterclaim of Knowlton reveals that the only claim made against Inland was that either it or its employee intentionally converted personal property.[4] Under the provisions of the Royal Globe policy, the insurer agreed to defend Inland against all claims for damages arising out of an "occurrence," which term was further defined as an "accident * * * which results, during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The contractual duty to defend thus hinges on two considerations: (1) Whether the intentional tort of conversion can ever be considered an "accident" as required by the policy; and (2) whether the alleged damages caused by the conversion constituted "property damage."

3. Contrary to both the expressed and implied claims of Inland, a declaratory judgment action is not a proceeding for interlocutory relief. Minn.St. 555.01 provides that judicial "declarations shall have the force and effect of a final judgment or decree." Any consideration of what subsequently transpired in the underlying *actions* brought by Knowlton and Dorsey is therefore irrelevant, for the crucial inquiry is whether the trial judge properly found no duty to defend based upon the facts existing at the time of the declaratory proceeding.

4. Inland has also argued that it is entitled to a defense because the fourth count of both the complaint and counterclaim alleged negligence. This count specifically alleged: "That by defendant's [Inland's] actions and by allowing

It is unnecessary for us to decide the first of these questions for, regardless of whether the tort of conversion can ever be caused by accident,[5] we conclude that Inland was not entitled to a defense because of the absence of "property damage." Professor Prosser has described the "gist of conversion" as an interference with the plaintiff's right to control his property. Prosser, Torts (4 ed.) § 15, p. 93. See, also, Restatement, Torts 2d, § 222A. In *Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955), we more fully described the tort as follows:

"To constitute conversion, there must be an exercise of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time."

It is evident from these authorities that personal property may be converted, as was alleged in the present case, without causing physical damage or destruction to the property.

In *B & L Furniture Co. v. Transamerica Ins. Co.*, 257 Or. 548, 480 P.2d 711 (1971), the Oregon Supreme Court considered an analogous appeal where an insurer had refused to defend its insured in an action for conversion. The insured, who was engaged in the business of selling furniture, erroneously repossessed various items of furniture

said removal of property to take place either by defendants and their agents, or through the *negligence* of defendants or their agents, defendants have willfully, intentionally, wantonly and maliciously converted said property." (Italics supplied.) At best this count is poorly drafted; at worst it has alleged the nonexistent tort of *negligent conversion*.

5. In perhaps the only case that has ever squarely considered this issue, the Arkansas Supreme Court held that an alleged conversion was not an "accident" as defined by a standard form policy of general liability insurance. See, *Proctor Seed & Feed Co. Inc. v. Hartford Accident & Indemnity Co.*, 253 Ark. 1105, 491 S.W.2d 62 (1973).

that had been sold under a conditional sales contract. At the time that this incident occurred, the insured held a comprehensive policy of liability insurance that obligated the insurer to assume the defense in lawsuits for "property damage * * * caused by an occurrence." The Oregon court held that the conversion alleged in the pleadings did not constitute "property damage" as required by the policy. See, also, *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489 (Tex.Civ.App.1970).

We are persuaded that the result reached in the B & L Furniture Company case is consistent with the law of this state. Inland was therefore not entitled to a defense under the general liability provisions of the Royal Globe policy since the pleadings filed by both Knowlton and Dorsey contained no allegations of "property damage" caused by the change in locks at the leasehold premises. For similar reasons, CNA had no duty to defend Inland because the excess third-party liability coverage afforded by its policy also required allegations of physical property damage.

Finally, we reject Inland's claim that Royal Globe had a duty to defend arising from the personal injury endorsement contained in the policy. Not only was the coverage afforded by this endorsement limited to specific torts apart from conversion, but it is readily apparent that the coverage extended was for personal injuries and not property damage. Cf. *Red & White Airway Cab Co. v. Transit Cas. Co.*, 305 Minn. 353, 234 N.W.2d 580 (1975).

Affirmed.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.