Roger LANOUE, Individually and d. b. a. Rog & Jim's Superette, and Rog & Jim's, Inc., Appellants,

v.

FIREMAN'S FUND AMERICAN INSURANCE COMPANIES, Respondent,

State Automobile and Casualty Underwriters, Respondent,

Donald L. Anderson et al., Respondents,

Richard D. Taaffe, Individually and d. b. a. Pixie Liquors, Respondent,

Speedy Market Incorporated, Respondent,

Jeffrey Lindsholm et al., Respondents,

Daniel O'Brien et al., Respondents,

Greg Orthun et al., Respondents.

No. 48272.

Supreme Court of Minnesota.

March 16, 1979.

Rehearing Denied May 9, 1979.

Meyer, Nelson & Miller, Rolf T. Nelson and Roger N. Eye, Robbinsdale, for appellants.

Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog, and W. Scott Herzog, Minneapolis, for Fireman's Fund American Ins. Companies.

Murnane, Murnane, Conlin & White and Lance B. Nyberg, St. Paul, for State Automobile and Casualty Underwriters.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Anderson et al.

George S. Roth, Minneapolis, for Taaffe et al.

Paul G. Donlin, St. Paul, for Speedy Market, Inc.

Mark A. Fonken, St. Paul, for Lindsholm et al.

Thomas F. Meany, Minneapolis, for O'Brien et al.

David F. Fitzgerald, Minneapolis, for Orthun et al.

Heard before KELLY, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

## OPINION

KELLY, Justice.

This is an appeal by the insureds, Roger Lanoue and Rog and Jim's Inc., from a declaratory judgment holding that the insurers, Fireman's Fund American Insurance Companies and State Automobile and Casualty Underwriters, were not obligated to defend a suit on behalf of the insureds and

that the insureds were not entitled to the attorneys fees, costs, and disbursements incurred in their defense. We reverse and remand.

Roger Lanoue, through Rog and Jim's, Inc., owned and operated Rog and Jim's Superette. Lanoue maintained a "Coverall" policy on his business issued by State Automobile and Casualty Underwriters (hereinafter State Auto). He also maintained a "Homeowner's Policy" issued by Fireman's Fund American Insurance Companies (hereinafter Fireman's Fund).

On December 20, 1974, Lanoue had several bottles of whiskey in his locked, private office which was located in the back room of the superette. The bottles were Christmas gifts from several of Lanoue's wholesale suppliers but Lanoue had not yet taken them home. The superette did not sell whiskey, though it did sell 3.2 beer.

Daniel O'Brien, then a minor, was an employee of the superette. At approximately 11 p. m., while the superette was open for business, O'Brien, who was then off duty, entered the superette. He went to the back room of the superette, removed four 6-packs of 3.2 beer from a cooler and placed them outside the back door, which was latched from the inside. O'Brien then jimmied the lock on Lanoue's office door, removed one of the bottles of whiskey from the office and placed it outside the back door of the superette, with the beer. O'Brien returned to the front of the store and purchased several items, paying by check. He added enough to the check to cover the cost of the beer he had placed outside the back door, stating to the clerk that he was repaying money owed Lanoue. Neither of the two employees on duty apparently noticed O'Brien's actions with the whiskey and the beer. O'Brien left the superette by the front entrance and then recovered the beer and whiskey he had left outside the back door.

Although conflict existed in the testimony, the trial court found as a matter of fact that later than night Jeffrey Anderson, who was then a minor, drank some of the liquor. No evidence presented indicated that Jeffrey drank any of the beer. Thereafter while Jeffrey was driving a vehicle, he was involved in a 1-car accident.

In September 1975, the parents of Jeffrey Anderson initiated legal proceedings against Lanoue, individually and d/b/a Rog & Jim's Superette. The Andersons alleged that Lanoue, through his agents, servants or employees, had furnished intoxicating beverages to Jeffrey Anderson and, as a result, Jeffrey Anderson was injured. The complaint, which alleged only dram shop facts, asked for $750,000 in damages.

Upon learning of the complaint Lanoue called the agent who had sold him the State Auto policy. Lanoue had learned of O'Brien's theft of the beer and whiskey from O'Brien on the day following the theft but he was not aware of any connection between O'Brien's taking the beer and whiskey and Jeffrey Anderson's accident until he was served with the summons and complaint. Lanoue related the entire story concerning both the beer and the whiskey to his insurance agent who relayed it to State Auto.

Lanoue tendered the defense of the claim to State Auto which declined to defend. The policy issued by State Auto excluded coverage where the cause of action resulted from the selling or serving of alcoholic beverages either as a business or illegally. Tender was thereafter made to Fireman's Fund on the basis of a Homeowner's insurance policy which Lanoue carried. The policy had both a "business purposes" exclusion and an "other premises" exclusion and provided excess coverage to any other insurance. Fireman's Fund also declined to defend.

As a result Lanoue engaged counsel to defend the Anderson action and to initiate a declaratory judgment action against State Auto and Fireman's Fund. Shortly before trial of the declaratory judgment action, the complaint in the Anderson action was amended to allege a claim of negligence against Lanoue. Thereafter, at the trial of the declaratory judgment action, both insurance companies agreed to defend the second cause of action added by the amend-

ed complaint on a basis limited to their policy provisions.

At the conclusion of the declaratory action the trial court found that neither of the insurers was obligated to defend the initial Anderson cause of action and that the insurers were not liable for costs, disbursements, or attorneys fees until the complaint was amended to include an allegation of negligence.

Plaintiffs, Lanoue and Rog and Jim's, Inc., appeal from this judgment. Plaintiffs argue that facts not stated in the Anderson complaint but known to the insurers indicated that the incident upon which the cause of action was based was within insurance coverage. As a result plaintiffs contend that the insurers were obligated to defend and should be required to indemnify plaintiffs for legal fees incurred in their defense as well as for legal fees incurred in prosecuting the present declaratory judgment action.

■ An insurer may avoid defending a complaint alleging a cause of action within policy coverage if actual facts outside the complaint would exclude the cause of action from coverage. *Weis v. State Farm Mutual Automobile Ins. Co.*, 242 Minn. 141, 64 N.W.2d 366 (1954). Similarly, an insurer is required to defend its insured against a complaint alleging a cause of action excluded from policy coverage if the insurer is aware of facts outside the complaint which would bring the cause of action within coverage.

In *Crum v. Anchor Casualty Co.*, 264 Minn. 378, 119 N.W.2d 703 (1963), Crum, an apartment owner, was sued by one of his tenants, a part-time employee of Crum's, for negligence in maintaining a common stairway. Later the tenant's complaint was amended to allege only a cause of action under the Workman's Compensation Act. Crum's insurance policy had an exclusion as to employees whose injuries arose out of the course of their employment or who had rights under the Workman's Compensation Act. But the insurance company had already deposed the tenant and had information which indicated that the tenant was not engaged in the course of her employment when the accident occurred. Nevertheless the insurer withdrew from the defense of the amended complaint. After settling with the tenant, Crum sued for attorney fees and settlement costs. The insurer was held to a duty to defend under these circumstances even after the complaint was amended to state a cause of action which was not covered by the policy.

■■ The insurer's duty to defend is not invoked solely by the nature of the complaint. Further, the insurer has the burden of showing that no duty to defend exists.

In *F. D. Chapman Const. Co. v. Glens Falls Ins. Co.*, 297 Minn. 406, 211 N.W.2d 871 (1973), several businessmen sued a construction company for negligently obstructing access to their businesses during construction of a sewer. The construction company's liability insurer refused to defend arguing that the damage did not arise out of an "occurrence" and that the injury claimed was not within policy coverage because it was not an "injury to real property." This court framed the issue of an insurer's duty to defend by stating "[T]he sole question is whether, from the pleadings and stipulated facts, it clearly appears that the businessmen's claim fell outside the terms of the policy." 297 Minn. 408, 211 N.W.2d 872. The court held that the requirement of an occurrence had been met. As to the injury to real property this court stated:

"Although the issue is not free from doubt, we think that the businessmen's complaints inferentially alleged a species of injury to real property. We are concerned here with the duty to defend a claim arguably covered by the policy. Although defendant insurer may have had no duty to pay judgments arising from noncovered injuries which the businessmen might obtain upon trial, it should have undertaken defense of the actions, reserving its right to refuse to satisfy any noncovered judgments. This would have more fairly served the interests of both the insured and the insurer than the re-

fusal to defend." 297 Minn. 408, 211 N.W.2d 872.

This court in *Chapman* did not indicate that the pleadings and facts must clearly establish an obligation to defend, but rather that they must clearly establish that the claim falls outside the policy terms or the duty to defend arises. This is buttressed by cases which state that the benefit of the doubt is to be given to the insured when determining the existence of a duty to defend. *Crum v. Anchor Casualty Co.*, 264 Minn. 378, 119 N.W.2d 703 (1963); *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976).

In the present case the trial court, in its memorandum of law, stated that "[t]he facts did not clearly establish an obligation to defend." Thus, the trial court improperly placed the burden of proving a duty to defend on the plaintiffs.

■■■ Both insurance companies purported to insure the plaintiff. Both insurance companies rely upon policy exclusions to deny that coverage for the incident existed. In determining the duty to defend, actual facts outside the complaint, but known to the insurers, may not be ignored and the burden of proof is on the insurance company. Thus, considering all the facts, if the insurance companies cannot show that their respective exclusions apply, then they must defend the plaintiff.[1]

■■■ The trial court found that the insurance companies were told the entire story of the incident upon which the claim was based. Further, the companies made their own investigations before denying coverage and refusing to defend. As to State Auto, it is apparent from the facts known to the company that the theft of the whiskey was not covered by the exclusion. The whiskey was not sold, served nor given, either as a business or illegally. It was stolen. Because all aspects of the claim are not outside coverage, State Auto was required to defend. *Christian v. Royal Ins. Co.*, 185 Minn. 180, 240 N.W. 365 (1932).

■■■ Fireman's Fund denied that coverage or the duty to defend existed based on exclusions in its Homeowner's Policy which stated, in pertinent part, that the policy did not apply:

"d. to bodily injury or property damage arising out business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits;

"e. to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any insured; * * *."

In *Milwaukee Mut. Ins. Co. v. City of Minneapolis*, 307 Minn. 301, 239 N.W.2d 472 (1976), this court considered a "business pursuits" exclusion where a policeman preparing to go on duty accidentally shot a fellow officer. This court held that shooting accidents are the result of activities which are "ordinarily incident to nonbusiness pursuits," specifically hunting, weapon collecting and target shooting. Thus the court found insurance coverage even though the accident arose out of the business pursuits of the policeman and occurred at a police station. See, also, *Farmers Ins. Exchange v. Sipple*, 255 N.W.2d 373 (Minn. 1977).

At least as to the whiskey, which was arguably personal property, Lanoue's keeping it where an irresponsible minor could get at it was an activity ordinarily incident to non-business pursuits, the possession of alcoholic beverages for personal consumption. This argument is not valid with respect to the beer because it was kept in large quantities for business purposes and was not kept for personal consumption. Because all aspects of the claim do not fall outside coverage, however, Fireman's Fund would be compelled to defend the action if this were the only possible exclusion. *Christian v. Royal Ins. Co.*, 185 Minn. 180, 240 N.W. 365 (1932).

---

1. Both insurers agreed to defend the plaintiff even if any of the allegations of the suit were "groundless, false or fraudulent." Thus, the merits of the "farfetched" suit are not relevant, as the dissent implies. The duty to defend is broader than the duty to indemnify.

■ Fireman's Fund's "other premises" exclusion has not previously been considered by this court. This court, however, has considered the "arising out of" language in other contexts and concluded that causation is implied. *Holm v. Mutual Service Cas. Ins. Co.,* 261 N.W.2d 598 (Minn. 1977) (use of car to transport police officer to scene of his alleged battery not sufficient to support liability of insurer on car insurance policy); See, also, *Engeldinger v. State Auto & Cas. Underwriters,* 306 Minn. 202, 236 N.W.2d 596 (1975). Thus the premises must bear some causal relationship to the liability. Such a relationship is apparent when a claimant trips over improperly maintained steps. In this case, however, causation is more difficult to perceive. The fact that something occurs at a place is not sufficient by itself to imply causation as to that place. It is more appropriate under the facts of this case to focus on the personal property—the whiskey—as being allegedly carelessly possessed by Lanoue at his office. Thus the liability is causally related to the whiskey, not the premises involved.

To deny that the insurers were initially obligated to defend this claim is to leave the plaintiffs in an untenable position. If they were to defend the dram shop complaint, they might prevail but would have to bear the costs of their own defense. Plaintiffs could avoid these costs only by clarifying the incident upon which the claim is based to the Andersons in the hope that they would amend their complaint. Yet this would be against plaintiffs' interests in prevailing against the complaint as well as being against the interests of their insurers. Also, insureds who buy insurance for the defense provided, not just for the indemnity features, would be losing part of the coverage they reasonably expected to have. The plaintiff herein bought, and paid for, comprehensive insurance coverage for his home and business, subject to exclusions which do not apply in this case. Both State Auto and Fireman's Fund, therefore, were obligated to defend the plaintiffs in the Anderson action as soon as the defense was tendered to them and are liable for the costs of defense thereafter incurred by the plaintiffs.

Plaintiffs also argue that they should be allowed attorneys fees on the present declaratory judgment action. Defendants state that the issue of attorney fees on the declaratory judgment action was not before the court below and is not a proper issue for this appeal. An examination of the record reveals that evidence of the plaintiffs' attorneys fees on the declaratory judgment action was received into evidence without objection. Further, in the plaintiffs' final argument and trial memorandum plaintiffs stated:

"We disagree with the policy by the Federal Court in *Western, supra.* [*Western Casualty and Surety Co. v. Polar Panel Co.,* 457 F.2d 957 (8 Cir. 1973)]. As we read it, the *Western* case does not allow in a *successful declaratory judgment action* for attorneys' fees to be charged back against the carriers found to have mistakenly denied coverage required under their own insurance contract. While the *Western* case may deter this court from awarding us more than the $5,019.00 expended in defending Roger Lanoue in the main Anderson vs. Taaffe action, it clearly requires reimbursement of at least those main action defense expenses."

It is apparent that plaintiffs intended to raise this issue and the failure of the defendants to respond to it will not preclude our considering it.

■ The general rule is that attorneys fees are allowed only when authorized by statute or provided for in the contract. See, *Rent-a-Scooter, Inc. v. Universal Underwriters Ins. Co.,* 285 Minn. 264, 173 N.W.2d 9 (1969). But in *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966), this court recognized a limited exception to the general rule. In *Morrison* an insurer refused to defend and was brought into the main case as a third-party defendant by the insured who sought a declaratory judgment to determine coverage of the policy. The third-party action was tried separately. The insured prevailed and was granted attorney fees for the main and for the third-

party action. On appeal this court affirmed, describing the third-party action as a breach of contract action for which the declaratory judgment costs were consequential damages. *Morrison* stands for the proposition that, where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden.

*Morrison* cited Appleman on Insurance which presented the situation as follows:

"Where an insurer failed to defend until after an adverse decision in a declaratory judgment action instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured." (Footnotes omitted.)

7A Appleman, Insurance Law and Practice, § 4691, p. 512.

This court has resisted efforts to expand the *Morrison* holding to allow collection of attorneys fees where the insured is seeking only payments under the insurance coverage. Thus a judgment for attorneys fees was reversed in *Abbey v. Farmers Ins. Exchange,* 281 Minn. 113, 160 N.W.2d 709 (1968), because the action for disability payments did not involve a failure of the insurer to assume the duty to defend. Similarly in *Rent-a-Scooter, Inc. v. Universal Underwriters Ins. Co.,* 285 Minn. 264, 173 N.W.2d 9 (1969), this court disallowed attorneys fees, even though the insurer had refused to defend, because the insured had allowed judgment to be entered against him by default and thus was not seeking to recover the costs of defense litigation or to force the insurer to defend.[2]

■ The present case, however, fits squarely within the exception carved out by *Morrison.* The plaintiffs are seeking to recover defense litigation costs and to force the insurers to defend. Defendant-insurers have wrongfully declined to defend in spite of their contractual duty to do so. We will not relieve the plaintiffs of the costs of litigation in the main case only at the expense of incurring litigation costs in this case including those incurred in this appeal.

Reversed and remanded for a determination of damages in accord with this opinion.

SHERAN, Chief Justice (dissenting).

I am unable to subscribe to the majority opinion of Mr. Justice Kelly, which in my view takes a major step beyond our previous holdings that is unacknowledged and unwarranted. The result is to disregard the language of insurance policies and to impose burdens on insurance companies for which they have in no way bargained.

2. In *Western Casualty and Surety Co. v. Polar Panel Co.,* 457 F.2d 957 (1972), the court, interpreting Minnesota law incorrectly, refused to allow attorneys fees in a declaratory judgment action by the insured against its insurer who had refused to defend. The court characterized *Rent-a-Scooter's* failure to allow attorneys fees as clearly overruling the *Morrison* decision be-cause it felt that denying attorneys fees "solely because the insured allowed a default to be entered * * * is unrealistic." 457 F.2d 962. The court failed to realize that the distinction was the relief requested. The insured in *Rent-a-Scooter* was not seeking defense litigation costs.

In this case an off-duty minor employee broke into a locked office and stole a bottle of whiskey belonging to the store's owner.[1] Another minor subsequently consumed some of the alcohol and drove into a telephone pole. The eventual result was a dramshop action against the store owner and his business. The majority holds the owner's insurance companies, which had expressed exclusions applying to such a suit,[2] responsible for the dramshop defense because they knew that what had really happened had nothing to do with the serving of liquor to a minor, i. e., the real facts did not fall within the exclusions to their policies. But neither did the real acts known to the insurance companies establish any cause of action which they would in fact be liable to defend. There was, of course, the possibility that a suit would be brought under some farfetched negligence theory that the policies would then cover. In fact, such a suit eventually was brought here. But a similar possibility exists in every case; there is no justification for holding an insurance company responsible for it unless it is a substantial likelihood or until it actually materializes. The facts here indicated neither a covered cause of action nor the likelihood of a covered suit.

The majority cites as authority for its rule *Crum v. Anchor Casualty Co.,* 264 Minn. 378, 119 N.W.2d 703 (1963), which held that facts outside the complaint known to the insurance company can establish an obligation to defend. But *Crum* was already a limited exception to the general rule that the allegations of the complaint determine the obligation to defend. In *Crum,* although the suit was brought within an exclusion to the policy, the actual facts known to the insurance company established a cause of action that the company would be obligated to defend. Thus, it appeared to make good sense to require the insurance company to handle the defense. The case currently before us is different. Not only was the suit brought within exclusions to the two policies, but the actual facts known to the insurance companies established no cause of action within the coverage of either policy.

Thus, the majority has extended the holding of *Crum* from "defense required when facts known establish a cause of action *covered* by the policy"[3] to "defense required when facts known indicate the *exclusion* doesn't apply." I see no rationale for such a step. It may be that what we have before us here is a relatively unique case. Ordinarily, if known facts indicate an exclusion doesn't apply, and the policy is a comprehensive one, a cause of action covered by the policy will probably be established. This case is different because the known facts indicate no liability at all, yet the plaintiff went ahead with the amended suit. Thus, a mistaken dramshop action became a farfetched negligence suit. Yet until that amended suit was actually brought there was simply nothing linking the insurance companies to the original action. To hold insurance companies responsible for the defense of an excluded suit under such circumstances is to ignore their right as businesses to provide only that product specified by the bargaining process. I would affirm the trial court.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Chief Justice SHERAN.

OTIS, J., took no part in the consideration or decision of this case.

---

1. The theft of the beer appears irrelevant because there was never any evidence that it was consumed by the injured minor.

2. State Auto's policy contained a provision expressly excluding dramshop actions from coverage. Fireman's Fund excluded damage arising out of business pursuits, which would appear to include a dramshop action.

3. The court in *Crum* summarized its holding as follows:

"* * * We think the better rule is that, if the insurer is advised by the insured what he claims the facts to be or the insurer by an independent investigation ascertains that the facts are in conflict with the complaint and, if established, will present a potential liability on the part of the insured covered by the insurance contract, the insurer is obligated to undertake the defense." 264 Minn. 392, 119 N.W.2d 712.