Jeffrey **ARNDT, et al.,**
**Petitioners, Appellants,**

v.

**AMERICAN FAMILY INSURANCE COMPANY, Respondent,**

**Ronald Kieffer, Defendant.**

No. C5–85–1342.

Supreme Court of Minnesota.

Oct. 24, 1986.

Thomas Laughlin, St. Paul, for appellants.

Willard L. Converse, St. Paul, for respondent.

AMDAHL, Chief Justice.

Appellants Jeffrey and Beverly Arndt filed suit to determine whether respondent-insurer American Family Insurance Company (American) is obligated to pay appellants' insurance claim, which was based on a farm family liability policy issued by American to the defendant, Ronald Kieffer (Kieffer). The trial court determined that the policy excluded coverage for the injuries sustained by appellants and granted summary judgment to American. The Court of Appeals, 380 N.W.2d 885, reversed, holding that exclusion 1(d) cited by the trial court did not preclude coverage. The Court of Appeals also determined that Coverage B, "Personal Liability Coverage," was applicable to the occurrence but further held that exclusion 4, which excluded Coverage B for any insured who resided off the insured premises, precluded such coverage. The Court of Appeals further held that since exclusion 4 precluded coverage only under Coverage B, Coverage C, providing for medical expense coverage, was applicable and awarded Kieffer that coverage. Our holding that exclusion 1(d) is effective excludes all coverage, and we therefore reverse the Court of Appeals determination that medical expense coverage existed under Coverage C and its holding that exclusion 1(d) is not applicable and we thus affirm, although on other grounds, its holding that coverage under Coverage B was excluded.

On New Year's Day 1983, Jeffrey Arndt was assisting his friend Ronald Kieffer manually unload frozen cornstalks from a farm implement called a chopper box. The shredded stalks were to be used as bedding in the barn located on the premises. While unloading the stalks, Arndt was caught in the machine's beaters and seriously injured.

Kieffer, along with his father Raymond and brother Daniel, are the named insureds on a "farm family liability policy" issued by American and in effect at the time of the accident. The policy lists the insured premises as consisting of 127.6 acres of property in Abbotsville, Wisconsin, where the farm's main dairy operations are located. The policy also lists a house on the Abbotsville plot as "additional premises covered." Though the policy only describes 127.6 acres, the total family farm consists of 210 acres of land owned by the Kieffers and 60 more acres which they rent. Daniel and Ronald are in the process of purchasing the farm from their father and operate it as a partnership.

The accident in question occurred on a 5–acre parcel of land in Dorchester, Wisconsin, where defendant was residing at the time. The Dorchester property is about 4 miles north and 3 miles east of the insured property and is not listed in the insurance policy. Title to the Dorchester property is in Ronald Kieffer's name alone. The Dorchester property has a house, a barn and a shed, and Kieffer has homeowner's insurance for the Dorchester house with a different insurer than American.

Following the accident, appellants filed a personal injury suit against Kieffer. Those parties subsequently entered into a stipulation and confession of judgment on the condition that it be satisfied only from the proceeds of insurance policies in effect at the time of the accident. Appellants commenced a garnishment action against American to satisfy the judgment, but abandoned the action after American denied liability. Appellants then filed a declaratory judgment action against American, seeking to determine if it was obligated to pay on the policy. Both the appellants and American moved for summary judgment. The trial court dismissed the declaratory judgment action, holding that appellants had no standing to contest the meaning of the insurance contract to which they were not a party. The trial court allowed appellants to orally amend their garnishment action, however, and adjudicated on the merits.

Before examining the language of the policy, we will address an issue raised by American. In the Arndts' appeal to the Court of Appeals, American argued that the trial court improperly allowed appellants to amend their garnishment complaint. The Court of Appeals refused to address the issue, finding that insurer had failed to file a notice of review as required under Minn.R.Civ.App.P. 106.[1] We think the Court of Appeals properly applied Rule 106.

We have previously applied Rule 106 to bar respondents from presenting issues not raised by a notice of review. In *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 632 (Minn.1983), the court refused to address whether respondent was entitled to show additional damages for mental anguish because respondent filed no notice of review. Similarly, in *Ford v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 294 N.W.2d 844, (Minn.1980), we refused to review the trial court's denial of a motion to join another defendant because respondents "did not file a notice of review to preserve this issue as required by Minn.R. Civ.App.P. 106 * * *." *Id.* at 845.

■ We find unpersuasive American's argument that it was not required to file a notice of review because the judgment was entirely in its favor. The issue of whether appellants could amend their garnishment action was decided adversely to American, but American did not file a notice of appeal because the trial court ultimately decided against coverage. This is the exact situation Rule 106 is intended to cover. *See* 3 E. Magnuson, D. Herr & R. Haydock, *Minnesota Practice: Appellate Rules Annotated* 250 (2d.ed. 1985). The policy for Rule 106 is to avoid piecemeal decisions and allow an appellate court to resolve all issues in one proceeding. *Id.* at 251; *see Kostelnik v. Kostelnik*, 367 N.W.2d 665, 669–70 (Minn.App.1985).

■ We also reject the insurer's argument that it was excused from filing a notice of review because the trial court order was not appealable. We have not addressed this exact issue; however, in *Kostelnik*, the Court of Appeals stated that "Rule 106 does not condition the right to file a notice of review on the order being an appealable order as to respondent * * *. Its purpose is to allow a matter that the

---

1. Minn.R.Civ.App.P. 106 states:

A respondent may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review with the clerk of the appellate courts.

The notice of review shall specify the judgment or order to be reviewed, shall be served and filed within 15 days after service of the notice of appeal, and shall contain proof of service.

appellate court will be hearing anyway to be heard in its entirety." 367 N.W.2d at 670. If the right to file a notice of review is not dependent on the order being appealable, it is logical that the requirement of filing a notice of review is not conditional on the order being appealable. American was thus not excused from filing a notice of review to present the issue arising from the trial court's memorandum order.

American correctly points out that the Court of Appeals and this court both have authority under Minn.R.Civ.App.P. 102 and Minn.R.Civ.App.P. 103.04 to suspend the rules or address specific issues despite a party's failure to satisfy the procedural rules. The decision whether to exercise that power was within the sound discretion of the Court of Appeals, however. We believe the enforcement of Rule 106 will encourage future respondents to file notices of review, thus providing the court and all parties with notice of all issues to be addressed on appeal.

We now turn to the issue of whether exclusion 1(d) in the policy bars coverage for the injuries suffered by Jeffrey Arndt. Under the policy, the Kieffers subscribed to three types of coverage: Coverage A under the policy is "Farm Liability Coverage", Coverage B is entitled "Personal Liability Coverage", and Coverage C is described as "Medical Expense Coverage to the Public." The policy limits insurer's liability, however, by specifying exclusions to coverage. Exclusion 1(d), the exclusion at issue, states: "All coverages under this policy do not apply to any bodily injury or property damages: * * * arising out of the ownership, use or control by or rental to any insured of any premises, other than insured premises." The trial court found this exclusion to prohibit recovery against American. The Court of Appeals reversed, citing our decision in *Lanoue v. Fireman's Fund Am. Ins. Co.*, 278 N.W.2d 49 (Minn. 1979).

In *Lanoue*, the plaintiff-insured stored bottles of whiskey at a superette he owned. The liquor was his personal property; the store did not sell whiskey. Some minors took and drank the whiskey without plaintiff's knowledge or consent and were later involved in a car accident. The defendant-insurer, which issued a homeowner's policy to plaintiff, denied coverage or defense of plaintiff based on an exclusion that barred coverage for injuries or damage " 'arising out of any premises, other than an insured premises, owned, rented or controlled by the insured.' " *Id.* at 53. In determining that the insurer was obligated to defend, we analyzed the "other premises" exclusion and stated:

> [T]he premises must bear some causal relationship to the liability. Such a relationship is apparent when a claimant trips over improperly maintained steps. In this case, however, causation is more difficult to perceive. The fact that something occurs at a place is not sufficient by itself to imply causation as to that place. It is more appropriate under the facts of this case to focus on the personal property—the whiskey—as being allegedly carelessly possessed by Lanoue at his [superette]. Thus the liability is causally related to the whiskey, not the premises involved.

*Id.* at 54. The Court of Appeals correctly determined that for exclusion 1(d) to apply, there must be some causation between defendant's liability and his ownership, use or control of the Dorchester property. We think the Court of Appeals erred, however, by concluding that no causation existed between defendant's liability and his ownership, use, or control of the property.

Applying *Lanoue*, the Court of Appeals found that Jeffrey Arndt's injuries arose out of Ronald Kieffer's negligent use of the chopper box, rather than his ownership, use, or control of the property. *Lanoue* is factually distinguishable, however. In *Lanoue*, we did not look to the causal relation between Lanoue's liability and his ownership, use or control of the superette because the exclusion did not contain those words. The court instead focused on whether a causal relation existed between Lanoue's liability and the premises to satisfy the term "arising out of the premises."

In contrast, exclusion 1(d) applies to injuries arising out of Kieffer's *acts* of ownership, use or control of uninsured premises. It is clear that defendant would not have been negligently using the chopper box on New Year's Day but for his desire to provide bedding for the barn located on the uninsured Dorchester property. The task of providing bedding for the barn is a part of Kieffer's ownership and use of the Dorchester property. We conclude that a causal relation exists between Kieffer's liability and his ownership, use and control of the uninsured premises, and that exclusion 1(d) therefore bars recovery against American.

We find the present case factually similar to *St. Paul Fire and Marine Ins. Co. v. Ins. Co. of North Am.*, 501 F.Supp. 136 (W.D.Va.1980), where the excess insurer, St. Paul Fire and Marine, sued the homeowner's insurer to recover benefits paid for damages arising from an accident on insureds' vacation premises. Insureds attempted to burn down an outbuilding on the premises, but the fire spread to adjoining property. Insurance Company of North America refused to indemnify because the homeowner's policy excluded coverage for damages "arising out of any premises" other than insureds' main residences. *Id.* at 138. The court found that a causal nexus existed and the exclusion applied because there "would have been no fire but for the building which the insureds desired to remove." *Id. at 139*.

Although the result of this decision is harsh, it appears that the result is due mostly to defendant's lack of diligence. The exclusion applies only to injuries arising from ownership, use or control of uninsured premises. Defendant could have made the Dorchester property part of the insured premises by having the property listed as added premises. Defendant also could have insured the Dorchester premises under the "Supplementary Coverages" provision of the policy by notifying American of the Dorchester property within 30 days of acquiring it and paying any added premiums. Instead, the Kieffers chose to insure only the 127.6 acres of property in

Abbotsville, even though the property encompassed 270 acres.

■ The appellants petitioned the court to determine the scope of farm liability coverage. We need not address that issue in light of our determination that 1(d) precludes coverage under the policy. We wish to make it clear, however, that this decision does not hold that farm liability coverage may only extend to "the fence lines of the farm." For example, we have previously found coverage where a farming accident occurred on a public highway, off the insured premises. *See Farm Bureau Mutual Ins. Co. v. Weber*, 310 Minn. 52, 58, 245 N.W.2d 238, 242 (Minn.1976). That decision is not affected by our holding here. We merely hold that where the insurance policy excludes accidents arising out of insured's ownership, use or control of uninsured premises and the insured greatly expands farming operations by purchasing property without informing the insurer or paying added premiums, an accident causally related to insured's ownership of the uninsured property is not covered.

Affirmed in part; reversed in part; and judgment of trial court reinstated.

YETKA, Justice (dissenting).

In this case, there were three different insurance coverages: one was a farm liability coverage—coverage A; the second was personal liability coverage—coverage B; the third was medical coverage—coverage C. The court of appeals held that there was no coverage under either A or B, but allowed medical payments under C.

An exclusion applicable to the personal liability coverage—coverage B—bars coverage if the insured is residing on premises not described in the policy itself—the situation that exists here. Therefore, the lower court's decision that coverage B does not cover the insured is understandable.

However, it is contended that the same exclusion also excludes coverage under coverage A—the farm liability coverage. The policy itself describes coverage A only as farm liability coverage with no further ex-

planation of its terms. The exclusion reads that all coverages under the policy do not apply to any bodily injury or property damages "arising out of the ownership, use or control by or rental to any insured of any premises, other than the insured premises."

Clearly, this coverage would insure against an innocent third party when that party was injured in the course of farm operations. Before the exclusion can operate to bar insurance coverage for such an injury, there must be some causal connection between the premises where the accident happened and the accident itself. Here, the injury, although it occurred on non-described insured premises, had no relationship to those premises. The injury occurred when Jeffrey Arndt was assisting Ronald Kieffer, the insured, in manually unloading frozen cornstalks from a farm implement called a chopper box. The stalks of the corn were then shredded and were to be used as bedding in the barn located on the premises where Ronald Kieffer resided. Arndt was caught in the machine's beaters and severely injured. The shredder could have been located anywhere in the country. It was a piece of machinery and the negligence of operating that machinery caused that injury and not the premises themselves.

In contrast, if the plaintiff had been injured in the barn by falling through the floor, obviously, there would be no recovery under the policy. Such an injury would be associated with the premises where Kieffer was living, premises not described in the initial policy itself. As the majority opinion notes, the Kieffers' farm liability coverage is not limited solely to injuries occurring on the described premises. Defense counsel admitted in open court that, if the plaintiff had been injured on a public highway or in the ditch while operating the Kieffers' farm machinery, there would have been coverage under the farm liability portion of the policy. His argument is that, in such a case, there would be no association between the injury and the non-insured property. The same argument could be made here because there was no association between the non-insured prop-

erty or any buildings on that property and the injury itself. The injury occurred because of the negligent use of the machinery.

This fact sufficiently distinguishes this case from *St. Paul Fire and Marine Ins. Co. v. Ins. Co. of North America*, 501 F.Supp. 136 (W.D.Va.1980), cited by the majority opinion in support of its holding. In *St. Paul Fire*, the negligent fire from a building on non-described property caused the loss. In such a case, the connection between the injury and the premises, which are usually considered to include both property and buildings, is clear. Here, the only cited connection between the farm machinery and the premises is that the shredded stalks produced might be useful in a barn. Such a connection is too attenuated a basis on which to exclude coverage.

Accordingly, I would reverse the court of appeals and find coverage under coverage A.