PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Appellant,

v.

Michael BROCKWAY, Russell
Huber, Respondents.

No. CO-87-328.

Court of Appeals of Minnesota.

Aug. 25, 1987.

Review Denied Nov. 13, 1987.

Stephen J. Foley, Meagher Geer Markham, Anderson Adamson Flaskamp &

Brennan, Minneapolis, for Progressive Cas. Ins. Co.

Scott B. Lundquist, Austin & Roth, Minneapolis, for Michael Brockway.

Gary L. Monahan, Morem & Monahan, Ltd., LeSueur, for respondent.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

RANDALL, Judge.

This is a declaratory judgment action brought by appellant, Progressive Casualty Insurance Company, to determine the scope of an exclusion in its mobile home liability policy sold to respondent Michael Brockway. Prior to trial, the parties moved for summary judgment. The trial court granted respondents Brockway and Russel Huber partial summary judgment, finding the policy's exclusionary language did not preclude coverage, and held that Brockway was entitled to personal liability coverage and the costs of settlement or defense. Pursuant to Minn.R.Civ.P. 54.02, the parties stipulated to a certification of the judgment as a final judgment, there being "no just reason for delay," so Progressive could appeal. The stipulation and certification provided that if the coverage issue were resolved in Brockway's favor, Brockway could apply to the court for attorney fees. We reverse.

## FACTS

Respondent Brockway owned a mobile home insured by appellant Progressive Casualty. The policy provided comprehensive personal liability coverage to $50,000 per occurrence. The policy covered:

sums that you are legally responsible to pay, except for punitive and exemplary damages, for bodily injury or property damage caused by you, subject to all terms and conditions * * *.

The policy exempted from coverage any liability arising out of the ownership, maintenance or use of a swimming pool, wading pool, dock, beach, or body of water.

On June 9, 1985, respondents Brockway, the insured, and Huber, the injured party, were at Lake Volney, Minnesota, where they had gone to cool off after a wedding party. The essential facts of how the accident and injuries happened are not in dispute. Both sides agree that Brockway intentionally, but without force or malice, bumped, pushed, or shoved his friend Huber toward the water, while Huber was standing on the dock, with the specific intention that Huber end up in the water. A recorded oral statement of Brockway states in part:

Q: Okay, and what happened, how did the accident happen?

A: Russ and I were out on the dock and we discussed going swimming that's why we were out there, and it was Russ's idea, I was sitting in the boat and he was on the dock and I couldn't get him to go in swimming cause it was his idea so I got out of the boat and I told him I was going to push him in the water, but I come up to him and I just give him a little nudge and he more or less just forgot how shallow the water was and dove in. I did nudge him, I will say that, but I didn't actually just push him in the water.

\* \* \* \* \* \*

Q: Okay, and then, was he, did he go backwards off the dock, forward or how did he go off the dock?

A: Well he was facing me when I got out of the boat and I was going to push him in and when he seen me coming, I nudged him and he kind of lost his balance, he must have been right on the edge of the dock and he turned around, I don't know if he was all the way turned around, I think he was more sideways, ya know, he was trying to turn around to dive and he was more sideways I guess when he did hit the water.

Huber's version given in a record oral statement is essentially the same:

Q: Okay, why don't you describe how the accident happened?

A: Well, we went to a wedding and we were just hot and sweaty and everything, and after the wedding we figured we would go out and take a swim, we went out there and on the end of their dock they had a boat there, docked on the side, and Mike was in the boat and I was standing on the side and he got out of it and he gave me a push, I believe he wanted me to check the water out first or whatever. And when I hit, I hit my head on the bottom of the lake and smashed my 4, 5 and 6 vertebra and I lost the feeling and everything in my hands and I couldn't get out of the water.

\* \* \* \* \* \*

Q: Okay, what was this about the boat, how did the boat come into play?

A: The boat was docked, like at the end of the dock you got this boat lift or whatever the thing is, but it wasn't a lift, it was tied on to the end of the dock because they never take their boat out of the water, it stays in there, and he got in the boat and was looking at some things or something in the boat, I don't know, and I was standing on the edge of the dock, out at the end, and when he got out he gave me a push, enough of a push to make me lose my balance.

\* \* \* \* \* \*

Q: Okay, were you intending to go in the water and he was just kind of giving you a playful tap, is that the kind of thing or what

A: Yah, it wouldn;t have been a real hard push.

Q: Okay, and then you lost your balance and fell off the dock head first into the water?

A: Yah, I was falling into the water, I was falling in on my side and I turned around to fall face first to see where I was falling and when I hit I hit my head on the bottom of the lake.

Although the trial court in its amended order for judgment and memorandum used the term "horse play" to describe the bumping, pushing, or shoving incident, it is clear that the bump, push or shove, however described, was an intentional act by Brockway to cause Huber to go off the dock into the water. Brockway concedes the push was intentional, and that it was Brockway's specific intent that Huber go off the dock and into the water.

Due to the manner in which he entered the water, Huber suffered severe injuries to his cervical spine. Brockway submitted a claim to Progressive and argues that Progressive has both a duty to defend him and a duty to indemnify him for any judgment Huber obtains against him as a result of this incident. Progressive started a declaratory action to determine whether it owed Brockway a duty to defend and indemnify.

Respondents moved for partial summary judgment (reserving for trial the merits of Huber's personal injury claim), arguing that there was liability coverage for Brockway and that, if the policy exclusion was ambiguous, there should be a narrow construction of the exclusionary clause to still result in personal liability coverage for Brockway. Respondents argue that the injuries and Brockway's liability did not arise out of the use of the dock or the body of water, but were the result of a negligent push or shove, and that the injuries should be covered by the liability portion of Brockway's homeowner's policy. The trial court found that Progressive's policy covered the accident, that the exclusion did not apply, and that Progressive owed Brockway a duty to defend and indemnify.

## ISSUE

Did the trial court err by concluding Progressive's policy exclusion for docks and water did not apply to these facts?

## ANALYSIS

The material facts are not in dispute. The evidence before this court consists of uncontested facts and the documentary evidence contained in the insurance policy in question. As such, a court of review need not defer to the court's interpretation of that evidence. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–26, 243 N.W.2d 302, 305 (Minn.1976), *cert. denied* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Thus, this court will determine whether the trial court properly interpreted and applied the law to the facts presented. *Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies*, 304 Minn. 179, 183–84, 229 N.W.2d 516, 519 (1975).

The trial court made as its key findings of fact:

5. Defendant Huber's claim of liability arises from his claim that defendant Brockway negligently pushed, shoved or bumped defendant Huber and *not* from a claim of negligent use of a body of water or a dock.

6. Defendant Brockway is entitled to personal liability coverage and payment for any costs incurred for settlement or the defense of any claim made by defendant Huber.

The trial court, in its memorandum attached to the order, found there was

not the requisite causal relationship between the acts of Defendant Brockway, which gave rise to the injuries of which Defendant Huber complains, and the dock or body of water where the acts and alleged injuries occurred to permit application of the exclusion so as to deny coverage in this case. Underscoring the Court's determination is a well-settled principle of law that exclusionary provisions of insurance contracts are to be construed narrowly in favor of coverage.

Appellant argues vigorously that the exclusion is directly on point because the dock and the water were "active accessories to the accident and to Huber's injuries." Respondents, on the other hand, argue that Huber's injuries were "caused" only by the act of Brockway pushing Huber, and that the dock and water were the "mere situs" of Huber's injuries.

We find appellant's position persuasive, and that on these facts there was sufficient

causal nexus between the incident and the dock and water that the exclusion, which we find unambiguous, applies and that there is no coverage.

Brockway intentionally chose the dock and that part of Lake Volney, where the water was shallow (3½ to 4 feet), to do what he assumed to be a safe and friendly act between two friends, i.e. push his friend off the dock and into the water. Brockway did not intend the injuries and did not anticipate that when entering the water, Huber would attempt to turn his body in such a way that his head hit the bottom of the lake first. But Brockway's lack of malicious intent and the seriousness of the injuries are not the issue. Brockway admitted his intentions were to push his friend, in what he thought to be a safe manner, off the dock into that body of water, and Huber does not dispute this.

The legal issue turns on the interpretation of "arising out of the use of a dock or body of water." Appellant focuses on the "arising out of the use of" language in the exclusion. In *Associated Independent Dealers, Inc.*, the supreme court notes that the term "arising out of the use" is broad in scope, but unambiguous. *Id.* at 183, 229 N.W.2d at 519. "Arising out of" means "originating from," or "having its origin in," "growing out of" or "flowing from." The question turns on the facts presented. *Id.* at 182, 229 N.W.2d at 518.

The phrase "arising out of" does not mean "proximately caused by." *Faber v. Roelofs*, 311 Minn. 428, 436, 250 N.W.2d 817, 822 (Minn.1977). "But for" causation, a cause and result relationship, is enough to satisfy the provisions of the policy. *Id.* at 436–37, 250 N.W.2d at 822 (citing 1 Long, The Law of Liability Insurance, § 1.22, pp. 1–57). On these facts, it is clear that "but for" the dock and the body of water, the accident would not have occurred. Brockway and Huber were on the dock preparing to go swimming. They were playing on and around the dock. Brockway pushed Huber off the dock, intending Huber to fall into shallow water. The fall from the dock into the water on to the lake bottom caused Huber's injuries.

Appellant also argues that Huber's injuries arose out of the "maintenance or use" of the dock, and thus, again, coverage is excluded. We find the necessary causal nexus between the dock, the body of water, Brockway's action, and Huber's injury for the exclusion to apply.

In *Arndt v. American Family Insurance Co.*, 394 N.W.2d 791 (Minn.1986), a case dealing with an exclusionary clause in a family farm liability policy, Arndt was helping the insured, Kieffer, manually unload frozen cornstalks from a chopper box. While unloading the stalks, Arndt got caught in two beaters and was injured. The accident occurred on property owned by the insured but not listed in the American Family policy. The property was insured by a different company, under a homeowner's policy. A provision in American Family's policy excluded injury arising out of the insured's "ownership, use, or control * * * of any premises other than the insured premises." The supreme court held that the policy provision excluded coverage for the accident.

On the other hand, we have *Lanoue v. Fireman's Fund American Insurance Companies*, 278 N.W.2d 49 (Minn.1979). In *Lanoue*, the insured stored bottles of whiskey for his personal use at a superette he owned. A minor, without his knowledge or consent, drank the whiskey and was later involved in a car accident. The defendant's homeowner's insurer denied coverage, relying on a policy exclusion for damages "arising out of any premises other than an insured premises owned, rented, or controlled by the insured." In determining the homeowners insurer owed a duty to defend, the supreme court stated:

[T]he premises must bear some causal relationship to the liability. Such a relationship is apparent when a claimant trips over improperly maintained steps. In this case, however, causation is more difficult to perceive. *The fact that something occurs at a place is not sufficient by itself to imply causation as to that place.* It is more appropriate under the facts of this case to focus on the personal property—the whiskey—as be-

ing allegedly carelessly possessed by La-noue at his [superette]. Thus the liability is causally related to the whiskey, not the premises involved.

*Lanoue,* 278 N.W.2d at 54, (cited in *Arndt* at 794, emphasis added).

The supreme court found *Arndt* factually distinguishable from *Lanoue* because, "in *Lanoue,* we did not look to the causal relation between Lanoue's liability and his ownership, use or control of the superette because the exclusion did not contain those words." *Arndt* at 794. Distinguishing between the *Lanoue* and *Arndt* exclusions, the court stated:

> The court * * * focused on whether a causal relation existed between Lanoue's liability and the premises to satisfy the term "arising out of the premises." In contrast, exclusion 1(d) applies to injuries arising out of Kieffer's *acts* of ownership, use or control of uninsured premises. * * The task of providing bedding for the barn is a part of Kieffer's ownership and use of the * * * property.

*Arndt,* 394 N.W.2d at 794–95.

We note the words in *Lanoue,* "the fact that something occurs at a place is not sufficient by itself to imply causation as to that place." *Lanoue,* 278 N.W.2d at 54. However, here it was not mere happenstance that Brockway pushed Huber off the dock into the lake. As stated above, Brockway intentionally chose the dock as the place to do an intentional act that he felt harmless at the time, but that had tragic consequences. This is not a case, for instance, where Brockway intended to push a friend toward the ground, and did so, and his friend accidentally and unintentionally rolled into the dock and struck his head, or rolled into the water and struck a submerged rock.

Although the terms "but for," [1] and "causal nexus," [2] are subtle and depend to a significant extent on the surrounding facts, it is clear that here the tests have been met, the exclusion is not ambiguous, and, even giving a strict interpretation because this is an exclusionary clause, we find the exclusionary clause applies.

Respondents argue vigorously that the dock and the body of water were the "mere situs" of the acts and the injuries, and that the essence of the lawsuit is a negligence claim by Huber against Brockway arising out of "horse play." Respondents argue that the negligent act of pushing could have occurred in any number of locations, and that here the situs of the accident just happened to be from a dock into a body of water.

While we agree (and it is not in dispute) that the dock and the body of water were the "situs" of the accident, we note that *every* accident, whether covered or uncovered, has to, by definition, have a "situs." It is the interplay and causal nexus between the site where the accident happened and the facts surrounding the incident that control, not just the topical label of situs or mere situs.

There is no evidence in the record to sustain anything but the forthright conclusion that Brockway chose this dock in a shallow part of Lake Volney to do a specific thing. Also, respondents have to concede that the push or shove, however called, was not inadvertent or accidental, but intentional. The only part unintended by Brockway was the injuries to his good friend, and the extent of the injuries is not the legal issue before this court.

We hold the requisite causal relationship between the dock, the body of water, Brockway's actions, and Huber's injuries is present, and exclusionary clause no. 7 of the homeowner's policy is applicable.

### DECISION

The trial court erred by finding the policy's exclusionary language did not apply. Because there is a direct causal relationship between the dock, the water, Huber's injury, and Brockway's liability, coverage is excluded.

Reversed.

---

**1.** *Arndt,* 394 N.W.2d at 795.

**2.** *Id.*