*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1211**

Amanda Stokes-Ciochetto, Paul Brian Ciochetto
and o/b/o Minor Children, petitioners,
Respondents,

vs.

Devin James Eskeli,
Appellant.

**Filed January 17, 2017
Reversed and remanded
Smith, Tracy M., Judge**

St. Louis County District Court
File No. 69HI-CV-16-339

James J. Vollstaedt, Sellman Borland & Simon PLLC, Hibbing, Minnesota (for respondents)

Rachel C. Sullivan, Prebich & Sullivan, P.C., Hibbing, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Devin Eskeli challenges a district court's issuance of a harassment restraining order to respondents, members of the Stokes-Ciochetto family. Eskeli argues on appeal that (1) the district court erred by issuing a harassment restraining order based

on a single incident of harassment; (2) the family failed to show the substantial adverse effect on respondent-daughter A.S. that is required to obtain a harassment restraining order; and (3) the record does not support the issuance of the harassment restraining order as to the remaining members of the family. We conclude that the district court erred by issuing a harassment restraining order based on a single incident of trespass and therefore do not reach arguments (2) and (3). We reverse and remand for further proceedings consistent with this opinion.

**FACTS**

Devin Eskeli, age 18 at the time of the petition, and A.S., age 17 at the time of the petition,[1] began dating in June 2015. Respondent-mother of A.S., Amanda Stokes-Ciochetto, and respondent-stepfather of A.S., Paul Ciochetto, voiced concerns about the relationship. Paul Ciochetto informed Eskeli multiple times that he was not allowed in the family's house. A.S. and Eskeli's relationship ended sometime before April 2016.[2]

Eskeli texted A.S. on April 3, 2016, explaining that he wanted to talk to her. A.S. responded that she was "open to talking and listening to him, but that was it." After midnight on April 4, 2016, Eskeli entered the family's house through a basement window. A.S. testified that she never permitted Eskeli to come to the residence that evening. Eskeli

---

[1] At the time of this appeal, A.S. was 18 years old and therefore no longer a minor.

[2] The parties dispute precisely when the relationship ended. A.S. testified that the relationship ended in December 2015 but acknowledged that she and Eskeli "were romantically involved" in February 2016. A.S. claimed her relationship with Eskeli after December 2015 "wasn't really a relationship[;] it was kind of a controlling thing." Eskeli claims the relationship continued after December.

went to the bedroom of A.S., and A.S. hid Eskeli in her closet because she did not want to get in trouble with her parents. While letting the dog outside, Paul Ciochetto discovered a set of in-line skates beneath the basement window. Paul Ciochetto asked A.S. who the in-line skates belonged to. A.S. claimed that she did not know. Paul Ciochetto discovered Eskeli hiding in A.S.'s bedroom closet and called 911.

A.S. initially told the responding police officer that she let Eskeli into the house, but she testified at trial that she had no recollection of this first interview. The police cited Eskeli for trespass and advised the family to apply for a harassment restraining order. As the police were leaving the family's house, A.S. recanted her statement to the police officer and told the officer that she had not given Eskeli permission to enter the house.

After the April 4 trespass, A.S. began receiving messages from Eskeli under an alias. Eskeli sent A.S. messages such as "I'm killing myself I don't even care anymore" and "I'll literally kill myself if I can't have u [sic] in my life." A.S. continued to communicate with Eskeli, sending messages such as "we can wait six months when we have the rest of our lives together," but she testified that she sent these messages because she "did not want him to commit suicide."

The family—parents Paul Ciochetto and Amanda Stokes-Ciochetto individually and on behalf of A.S. and her younger sister A.C.—petitioned for and received a temporary ex parte harassment restraining order on April 4, 2016. An evidentiary hearing was held on May 23. At the close of the family's case, Eskeli moved for judgment as a matter of law, arguing that the family had produced insufficient evidence to permit issuance of a harassment restraining order. The district court denied the motion, concluding that the

3

family did not have to prove more than a single incident of trespass to obtain the harassment restraining order. The district court informed Eskeli's attorney that it would "be a waste of time" to argue the point, and Eskeli's attorney made the decision to call only Eskeli's sister as a witness. Eskeli did not testify at trial. The district court issued the harassment restraining order "based on the single incident of the respondent entering the petitioners' home without their permission."

Eskeli appeals.

## D E C I S I O N

Eskeli argues that the district court erred by issuing the harassment restraining order based on a single incident of trespass. The family concedes that "one isolated instance of harassment not involving physical or sexual harassment may not alone constitute grounds for issuance of [a harassment restraining order]." We review questions of statutory interpretation de novo. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn. 2001).

Under Minn. Stat. § 609.748, subd. 5(a)(3) (2016), a district court may issue a harassment restraining order if it finds that "there are reasonable grounds to believe that the respondent has engaged in harassment." The statute defines "harassment" as

> a single incident of physical or sexual assault . . . or repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target.

*Id.*, subd. 1(a)(1) (2016). To establish harassment by "physical assault," a petitioner must demonstrate that "the respondent intentionally inflicted or attempted to inflict bodily harm

4

upon another person." *Peterson v. Johnson*, 755 N.W.2d 758, 760 (Minn. App. 2008). Absent a single incident of physical or sexual assault, "[o]ne incident of an intrusive or unwanted act is insufficient to prove harassment." *Id.* at 766.

The district court acknowledged that a "strict reading of the statute" does not permit the issuance of a harassment restraining order based on a single incident of trespass but explained that Eskeli's conduct rose "to the same level of seriousness as a physical assault which only requires a single incident." The statute permits the issuance of a harassment restraining order based on a single incident only if that incident was "physical or sexual assault." Minn. Stat. § 609.748, subd. 1(a)(1). Absent physical or sexual assault, the plain language of the statute requires the district court to find "repeated incidents of intrusive or unwanted acts, words, or gestures." *Id.* "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2016).

We have previously rejected attempts to broadly construe "a single incident of physical . . . assault." *Id.* In *Peterson v. Johnson*, the district court issued a harassment restraining order based on a single incident where the respondent verbally threatened the petitioner and stuck his chest out but did not physically touch the petitioner. 755 N.W.2d at 761. This court reversed and vacated the district court's decision, concluding that the concept of physical assault contemplated by the statute is narrow in scope and requires proof that the respondent inflicted or attempted to inflict bodily harm. *Id.* at 763.

We conclude that the district court erred in issuing the harassment restraining order based on a single incident of physical trespass. Minn. Stat. § 609.748, subd. 1(a)(1).

5

The family argues that we may nevertheless affirm the harassment restraining order on the alternative theory that Eskeli committed "repeated incidents of intrusive or unwanted acts, words, or gestures." As an alternative to that, the family asks us to remand the case to the district court to allow the district court to rule on whether Eskeli engaged in multiple incidents of unwanted conduct warranting issuance of a harassment restraining order. Eskeli argues that either outcome is barred because the family failed to file a notice of related appeal as required by Minn. R. Civ. App. P. 106.

Minn. R. Civ. App. P. 106 states, "After an appeal has been filed, respondent may obtain review of a judgment or order entered in the same underlying action that may adversely affect respondent by filing a notice of related appeal." A respondent is barred from presenting issues not raised by a notice of related appeal. *Arndt v. Am. Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn. 1986). But a respondent is not required to file a notice of related appeal where the respondent "advances on appeal an argument that was presented to, but was not ruled on by, the district court and is an alternative ground that supports affirmance of a judgment or order that was entered in respondents' favor." *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 332 (Minn. 2010). In cases where the district court did not rule on the alternative argument, remand is appropriate to allow the district court to address the unanswered issue. *See id.* (remanding the case to the district court on an issue presented to the district court but not decided).

The family argued before the district court that Eskeli had engaged in repeated incidents of unwanted conduct, which taken together had "substantial adverse effects" on the family. The family did not argue that a single incident warranted the issuance of the

6

harassment restraining order. Because the family advanced the argument that the harassment restraining order should be issued because of repeated incidents of unwanted conduct but the district court did not rule on the argument, the family was not required to file a notice of related appeal. *Id.*

Eskeli argues that the district court rejected the family's repeated-incidents argument and concluded that the April 4 trespass was the only incident of harassment committed by Eskeli. We cannot discern from the district court's order whether it intended to reject the family's repeated-incidents argument. The district court checked only the box for breaking and entering on the order and explained in its memorandum that the single incident of breaking and entering was sufficient. Based on our reading of the district court's order, the district court neither accepted nor rejected the family's repeated-incidents argument.

Eskeli also attempts to distinguish this case from *Day Masonry*, 781 N.W.2d at 321, by arguing that the family did not present two theories of relief—the family only argued that Eskeli had engaged in repeated incidents of unwanted conduct. But a notice of related appeal is not required "where a respondent advances on appeal *an argument* that was presented to, but was not ruled on by, the district court." *Id.* at 332 (emphasis added). *Day Masonry* does not require the respondent to have presented at least two arguments before the district court. The district court never ruled on the family's repeated-incidents argument, and therefore a notice of related appeal was not required.

We do not accept the family's argument that we may affirm the harassment restraining order based on the other incidents of harassment alleged by the family.

7

Determination of whether these other incidents rise to the level of harassment "necessarily involves factual findings." *See Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn. 1985) (describing the district court's role in fact finding). Our court does not engage in fact finding. *Id.* Fact finding is the duty of the district court, and the district court neglected to make findings on the family's other alleged incidents of harassment.

Instead, we reverse and remand. On remand, the district court must determine whether repeated incidents of unwanted conduct warrant the issuance of the harassment restraining order. Minn. Stat. § 609.748, subd. 1(a)(1). The district court must determine whether (1) Eskeli engaged in repeated unwanted conduct that (2) had a "substantial adverse effect" on the family members' "safety, security or privacy." *Id.*; *Dunham v. Roer*, 708 N.W.2d 552, 566 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006). In doing so, the court must find whether "there are reasonable, rather than merely subjective, grounds to believe that the accused engaged in harassment." *Id.* at 567. The statute "requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Id.* The statute also requires the district court to make findings for each family member and permits the district court to grant the harassment restraining order only to those family members who have been "victim[s] of harassment." Minn. Stat. § 609.748, subd. 2 (2016). We express no opinion as to whether the record is sufficient to sustain the harassment restraining order as to any or all members of the family. On remand, the district court may, in its discretion, reopen the record for further evidence.

**Reversed and remanded.**