PER CURIAM.
¶1 Rolayne Renstrom was injured on property co-owned by Susan Thielke and Pauline Reagor. Renstrom contends an insurance policy that Progressive Preferred Insurance Company issued to Reagor provides coverage for her injuries. The circuit court granted summary judgment in favor of Progressive, concluding the undisputed facts demonstrated that Renstrom's injuries were excluded from coverage under Progressive's policy. We agree with the court's determination that Progressive's policy does not cover Renstrom's injuries, and we therefore affirm.
BACKGROUND
¶2 The following facts are undisputed for purposes of this appeal. At all times relevant to this case, Reagor was a resident of Stillwater, Minnesota. Her Stillwater condominium was insured under a homeowner's policy issued by Metlife Auto & Home.
¶3 In 2007, Reagor and Thielke jointly purchased a cabin on Schoolhouse Lake near Medford, Wisconsin (the Cabin Property). The Cabin Property was adjacent to another property Reagor owned. Both the Cabin Property and Reagor's adjacent property were insured under homeowner's policies issued by Little Black Mutual Insurance Company.
¶4 In 2012, Reagor purchased a personal umbrella policy from Progressive. The policy was renewed on October 5, 2013. The policy's declarations page contains a section entitled "Scheduled premises." The only property listed under that heading is Reagor's Stillwater condominium.
¶5 Reagor and Thielke spent the weekend of Friday, November 1, 2013, through Sunday, November 3, 2013, getting the Cabin Property and Thielke's parents' nearby cabin ready for winter. Thielke invited Renstrom to join them, and she and Renstrom stayed at the Cabin Property that weekend. Reagor and another friend stayed at Reagor's adjacent property.
¶6 The Cabin Property was used year-round and had a wood-burning stove for heat. On Sunday, November 3, Thielke, Reagor, their guests, and Thielke's father planned to spend the day splitting wood at the Cabin Property, using Thielke's father's portable wood splitter. The wood was to be used primarily on the Cabin Property, to heat the cabin during the winter and to burn in the property's fire pit during the summer.
¶7 During the wood-splitting operation on November 3, Renstrom was tasked with loading wood into the splitter, which Reagor was operating. At some point, Renstrom's hand became trapped in the splitter, resulting in serious injuries. Renstrom subsequently filed the instant direct action lawsuit against Little Black, Metlife, and Progressive.
¶8 Progressive moved for summary judgment, asserting its policy excluded coverage for Renstrom's injuries because they arose out of the ownership and use of premises owned by Reagor that were not listed as scheduled premises on the policy's declarations page. Following briefing by the parties, the circuit court determined that Progressive's policy excluded coverage for Renstrom's injuries. Renstrom moved for reconsideration and also moved to supplement the record with additional documents, which she asserted were relevant to the court's coverage determination. The court denied Renstrom's motions, and Renstrom now appeals.[1]
DISCUSSION
¶9 We review a grant of summary judgment independently, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015-16).[2] Here, the circuit court concluded Progressive was entitled to summary judgment because its policy did not provide coverage for Renstrom's injuries. The interpretation of an insurance policy presents a question of law for our independent review. Danbeck v. American Family Mut. Ins. Co. , 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.
¶10 On appeal, Renstrom argues the circuit court erred by granting Progressive summary judgment for three reasons: (1) the exclusion that the court relied upon is ambiguous; (2) genuine issues of material fact exist regarding whether Reagor had a reasonable expectation of coverage; and (3) the exclusion does not apply in any event because the undisputed facts show that Renstrom's injuries did not arise out of Reagor's ownership, maintenance, or use of the Cabin Property. We address and reject each of these arguments below.
I. Ambiguity
¶11 The circuit court concluded-and it is undisputed on appeal-that Progressive's policy should be interpreted in accordance with Minnesota law. The Minnesota Supreme Court has held that, when a policy's language is clear and unambiguous, courts must interpret the policy according to its plain, ordinary meaning so as to effectuate the parties' intentions. Carlson v. Allstate Ins. Co. , 749 N.W.2d 41, 45 (Minn. 2008). Policy language is ambiguous if it is susceptible to two or more reasonable interpretations. Id. Ambiguous policy language is construed against the insurance company "according to the 'reasonable expectations' of the insured." General Cas. Co. v. Wozniak Travel, Inc. , 762 N.W.2d 572, 575 (Minn. 2009) (citation omitted).
¶12 In this case, the declarations page of Progressive's policy states, in relevant part:
Scheduled exposures
We have issued this insurance based upon the exposures listed in the following section. If there are any changes in exposures, advise your agent immediately so that we may consider those exposures for coverage. Failure to timely report changes in exposures in accordance with the terms and conditions of the policy will result in no insurance being afforded by this policy.
Below that language, the declarations page contains the subheading "Scheduled premises," beneath which is the additional subheading "Residences." The only property listed underneath the "Scheduled premises" and "Residences" subheadings is Reagor's Stillwater condominium.
¶13 Thereafter, policy exclusion 1.h. provides, in relevant part:
Coverage under this policy will not apply to any injured person for:
1. bodily injury , personal injury or property damage :
....
h. arising out of the ownership, maintenance, or use of any premises owned by you or a relative , or furnished or available for the regular use by you or a relative , other than a scheduled premises .
¶14 Read together, the declarations page of the Progressive policy and exclusion 1.h. indicate that: (1) the policy does not cover injuries arising out of the ownership, maintenance, or use of any premises owned by Reagor that are not scheduled premises; and (2) the Cabin Property is not listed as a scheduled premises. Thus, assuming Renstrom's injuries arose out of the ownership, maintenance, or use of the Cabin Property (an issue we address below), these provisions appear to demonstrate that the Progressive policy does not cover Renstrom's injuries.
¶15 Renstrom argues, however, that additional policy language renders exclusion 1.h. ambiguous. Specifically, she cites a definition found in an endorsement attached to the Progressive policy, which states that the term "scheduled premises" means "any residence or rental property shown on the declarations page and any other residence or rental property that you acquire during the policy period." Renstrom contends a reasonable insured could interpret the term "residence," which the policy does not define, to refer only to a dwelling where the insured resides full-time. Renstrom therefore argues that, because the Cabin Property was not Reagor's full-time residence, Reagor could have reasonably believed she did not need to list the Cabin Property as a scheduled premises in order to obtain coverage under the Progressive policy for injuries occurring on that property. Renstrom argues Reagor's deposition testimony supports this interpretation because it shows that Reagor did not consider the Cabin Property to be a residence.[3] Renstrom therefore argues Reagor had a reasonable expectation of coverage for injuries arising out of her ownership, maintenance, or use of the Cabin Property, even though that property was not listed on the policy as a scheduled premises.
¶16 Renstrom's argument that exclusion 1.h. is ambiguous, in light of the undefined term "residence" in the definition of "scheduled premises," appears on the surface to have some potential merit. However, we ultimately reject Renstrom's ambiguity argument because we conclude another policy provision removes any potential ambiguity. Namely, the first page of the Progressive policy states:
IMPORTANT NOTICE
You are required to report to us and schedule on your policy ALL VEHICLES , ALL WATERCRAFT and ALL PREMISES that are owned by you or a relative , or furnished or available for the regular use of you or a relative , for which you seek coverage under this policy. THERE IS NO COVERAGE UNDER THIS POLICY WITH RESPECT TO VEHICLES , WATERCRAFT OR PREMISES THAT ARE OWNED BY YOU OR A RELATIVE , OR FURNISHED OR AVAILABLE FOR THE REGULAR USE OF YOU OR A RELATIVE , IF THEY ARE NOT SCHEDULED ON THIS POLICY.
This "Important Notice" clearly informed Reagor that all of the premises she owned needed to be scheduled on the policy in order for the policy to provide coverage with respect to them. In light of this language, Reagor could not have reasonably expected that the Progressive policy would provide coverage for injuries arising out of her ownership, maintenance, or use of the Cabin Property, which was not scheduled on the policy.[4]
¶17 Renstrom also argues that the following language in the endorsement attached to Progressive's policy creates ambiguity:
Policy Period and Territory
The policy period is as stated in the declarations page . This policy applies to occurrences that take place anywhere in the world.
All other terms, limits and provisions of this policy remain unchanged.
Renstrom argues a provision stating that the policy's coverage applies anywhere in the world is inconsistent with an exclusion limiting coverage to those premises expressly listed on the declarations page.
¶18 We reject this argument for two reasons. First, Renstrom ignores the last sentence of the language quoted above, which clearly states that "[a]ll other terms, limits and provisions of this policy remain unchanged." This language clearly conveys that coverage under the policy is determined based on all of the relevant policy provisions, including any exclusions. Second, contrary to Renstrom's belief, the quoted provision does not actually state that the policy's "coverage" applies anywhere in the world; instead, it states the "policy" applies to "occurrences" that take place anywhere in the world. Again, the "policy" includes various exclusions. It would therefore be unreasonable for an insured to expect-based on the language quoted above-that occurrences taking place anywhere in the world would necessarily be covered under the policy, even if an exclusion otherwise barred coverage.
II. Genuine issues of material fact
¶19 Renstrom next argues that summary judgment was inappropriate because there were genuine issues of material fact regarding whether Reagor reasonably believed that she did not need to list the Cabin Property as a scheduled premises in order to obtain coverage under the Progressive policy. In support of this argument, Renstrom cites a three-page Renewal Questionnaire that Progressive sent to Reagor. Renstrom contends the Renewal Questionnaire supports a conclusion that Reagor reasonably expected the Progressive policy to cover injuries like the ones at issue in this case.
¶20 Renstrom's argument fails because, as Renstrom concedes, the Renewal Questionnaire was not in the record at the time the circuit court granted Progressive's summary judgment motion. Renstrom subsequently moved for reconsideration of the circuit court's decision and, at the same time, moved to supplement the record to include the Renewal Questionnaire. However, the court denied Renstrom's motion to supplement the record, concluding the Renewal Questionnaire "could have been obtained with reasonable diligence[ ] at the time of the filing, arguing and decision-making of the motions for summary judgment."
¶21 On appeal, Progressive argues the circuit court properly exercised its discretion by denying Renstrom's motion to supplement the record. In response, Renstrom does not develop any argument to support a conclusion that the court erroneously exercised its discretion in that regard. We will not abandon our neutrality to develop such an argument for her. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82. Moreover, unrefuted arguments are deemed conceded. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Consequently, the Renewal Questionnaire was not properly before the circuit court on summary judgment. As a result, Renstrom cannot now rely on that document to support the existence of a genuine issue of material fact regarding coverage.
III. Interpretation of exclusion 1.h.
¶22 Finally, Renstrom argues that, even if exclusion 1.h. is unambiguous, it does not apply in this case because Renstrom's injuries did not arise out of the ownership, maintenance, or use of the Cabin Property. Renstrom instead contends that her injuries arose from Reagor's negligent use of the wood splitter, which just so happened to be on the Cabin Property at the time of the accident.
¶23 Renstrom's interpretation of exclusion 1.h. is at odds with Minnesota law. The Minnesota Supreme Court has interpreted the phrase "aris[ing] out of" as requiring merely a "but-for" causal connection. See National Hydro Sys. v. M.A. Mortenson Co. , 529 N.W.2d 690, 693 (Minn. 1995). In this case, the circuit court aptly observed that Renstrom's injuries
would not have occurred but for Reagor's ownership of the property. As part of her ownership of the property, she was cutting wood for burning in the cabin's wood stove and for the fire pit on the property .... [Reagor] would not have been negligently using the wood splitter which gave rise to the plaintiff's injury but for [Reagor's] desire to provide fire wood for the property.
We agree with the court's analysis of this issue. Because Renstrom's injuries would not have occurred but for Reagor's ownership and use of the Cabin Property, her injuries arose out of Reagor's ownership and use of that property, and exclusion 1.h. therefore bars coverage.
¶24 Renstrom's argument that exclusion 1.h. does not apply is also contrary to Arndt v. American Family Insurance Co. , 394 N.W.2d 791 (Minn. 1986). In that case, Jeffrey Arndt was injured while helping his friend, Ronald Kieffer, manually unload frozen corn stalks from a farm implement called a chopper box. Id. at 792. The shredded corn stalks were to be used as animal bedding in a barn located on the premises where the accident occurred. Id. The Kieffer family's farm consisted of 270 acres, but only 127.6 of those acres were listed as insured premises on a farm liability policy that American Family had issued to the Kieffers. Id. Arndt's accident occurred on a five-acre parcel in Dorchester, Wisconsin, that was not part of the insured premises listed on the policy. Id. at 793. American Family therefore argued its policy did not provide coverage for Arndt's claims based on exclusion 1(d), which stated that "[a]ll coverages under this policy do not apply to any bodily injury or property damages: ... arising out of the ownership, use or control by or rental to any insured of any premises, other than insured premises." Id. at 794.
¶25 The Minnesota Supreme Court concluded that, in order for the above exclusion to apply, "there must be some causation between defendant's liability and his ownership, use or control of the Dorchester property." Id. The court then explained:
It is clear that defendant would not have been negligently using the chopper box on [the date of the accident] but for his desire to provide bedding for the barn located on the uninsured Dorchester property. The task of providing bedding for the barn is a part of Kieffer's ownership and use of the Dorchester property. We conclude that a causal relation exists between Kieffer's liability and his ownership, use and control of the uninsured premises, and that exclusion 1(d) therefore bars recovery against American [Family].
Id. at 795. The court further clarified that exclusion 1(d) applied to "injuries arising out of Kieffer's acts of ownership, use or control of uninsured premises," rather than injuries arising from the premises themselves. Id. at 794-95.
¶26 The circumstances of this case are similar to those in Arndt . As noted above, Reagor was using the wood splitter on the Cabin Property to split wood that would later be used to heat the cabin and would also be burned in the property's fire pit. Providing firewood for the Cabin Property was an act of ownership and use of the property, just as providing bedding for the barn in Arndt was an act of ownership and use of the relevant property in that case. Reagor would not have been using the wood splitter on the day of the accident but for her desire to provide firewood for the Cabin Property, just as Kieffer would not have been using the chopper box on the day of the accident in Arndt but for his desire to provide bedding for the barn on that property.
¶27 Renstrom lists a number of facts that she believes distinguish this case from Arndt . However, none of the facts she relies on are material to our analysis. For instance, it does not affect our analysis that Reagor did not own the wood splitter, that the wood splitter was not permanently kept at the Cabin Property, that Reagor did not arrange to have the wood splitter on the Cabin Property on the day of the accident, or that Reagor did not "orchestrate" the wood-splitting activity that date. Reagor's ownership and control of the wood splitter do not alter the fact that, at the time of the accident, Reagor was using the wood splitter on the Cabin Property to create firewood primarily for the benefit of that property. In other words, regardless of Reagor's ownership and control of the wood splitter, it is clear that Renstrom's injuries would not have occurred absent Reagor's acts of ownership and use of the Cabin Property on the day of the accident.[5] Because Renstrom's injuries arose out of Reagor's ownership and use of the Cabin Property, the circuit court correctly concluded that Progressive's policy does not cover Renstrom's injuries.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

After Renstrom filed her notice of appeal, Progressive questioned this court's jurisdiction, asserting Renstrom had not appealed from a final order. The circuit court subsequently entered a final order granting Progressive's summary judgment motion and dismissing Progressive from the case. Based on that order, we concluded we had jurisdiction over Renstrom's appeal.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

For instance, when asked during her deposition how many properties she had owned other than the Cabin Property and her Stillwater condominium, Reagor responded, "Five or six." The following exchange then occurred:
Q And how many of those were residences?
A Residences that I lived in?
Q Yes. Where you lived.
A Four.
Q And then what were the other one or two properties?
A One was a rental property and one was a seasonal cabin.

In addition, we observe that Renstrom does not respond to Progressive's argument regarding the "Important Notice" language, or even acknowledge the existence of that language in her appellate briefs. Arguments not refuted are deemed conceded. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

Similarly, it does not matter for purposes of our analysis that the wood Reagor was splitting did not originate from the Cabin Property, that some of the wood may have been intended for other uses, that Reagor did not invite Renstrom to the Cabin Property on the day of the accident, and that Reagor was not staying at the Cabin Property on that date. Again, none of these particulars change the fact that Renstrom's injuries would not have occurred but for Reagor's acts of ownership and use of the Cabin Property.